CoAST CoIL COMPANY, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 3431–65.   Filed June 27, 1968.

*Douglas W. Argue* and *Gilbert Dreyfuss,* for the petitioner.
*Thomas J. Sullivan,* for the respondent.

HOYT, *Judge:* Respondent determined a deficiency in petitioner's income tax for the period July 1, 1960, to June 30, 1961, after disallowance of certain depreciation deductions claimed. Petitioner, however, while reexamining its return for that year, discovered its failure to take a deduction for a loss resulting from sale of its accounts receivable at less than book value. By its petition filed herein error is assigned to respondent's failure to allow the loss from this sale. The sale occurred while petitioner was liquidating pursuant to section

---

337.[1] By stipulation respondent concedes that petitioner is entitled to the depreciation expense deduction claimed and disallowed.

The two issues which remain to be decided are:

(1) Did petitioner in fact suffer a loss by the sale of its accounts receivable; and

(2) Does the sale of accounts receivable fall within the nonrecognition-of-loss provisions of section 337?

### FINDINGS OF FACT

Those facts which were stipulated are found accordingly, and incorporated herein by this reference.

Petitioner, Coast Coil Co. (now dissolved), was a corporation organized and existing under the laws of the State of California, with its principal place of business located in Los Angeles, Calif. Petitioner's final income tax return for the period here involved was timely filed with the district director of internal revenue at Los Angeles, Calif. Petitioner regularly kept its records and filed its Federal income tax returns on the accrual method of accounting.

Petitioner was incorporated in 1954, and since that time had been engaged in the manufacture, distribution, and sale of electric and electronic equipment. Some of its sales were on open account and were reflected on its books and tax returns as accounts receivable. Petitioner did not maintain a reserve for bad debts but instead used the specific chargeoff method of reporting bad debts for Federal tax purposes. As an accrual basis taxpayer, petitioner had included the full face value of the receivables in its gross income for Federal tax purposes.

On April 25, 1961, petitioner adopted a plan of complete liquidation pursuant to section 337. Less than a year later, by March 15, 1962, most of petitioner's assets had been distributed to its shareholders in complete liquidation. Petitioner was dissolved pursuant to the laws of the State of California on April 25, 1962.

During the last week of April 1961, preliminary negotiations began for the sale of Coast Coil. Petitioner's president, A. K. Frederick, and McKay Manning, Inc.'s president, Howle Saltzman, initially agreed on a purchase price of $575,000. That amount was determined through appraisal of the fixed assets, an examination of the books, and further negotiations. The initial agreement contemplated alternative forms of final settlement. McKay Manning would either buy the stock at the agreed price, or instead elect to purchase from Coast Coil all its assets except cash, certain securities, and an automobile. The latter method was elected, and on June 29, 1961, the agreed-upon assets were sold to McKay Manning for a total adjusted consideration of $386,758.88.

---

[1] All section references are to the Internal Revenue Code of 1954, unless otherwise specified.

When the buyer elected to purchase assets rather than stock, the value of the assets to be retained by petitioner was deducted from $575,000 to reach the new purchase price. Each item sold had previously been valued separately, some according to an appraisal by the buyer, others at book value, and others through negotiations. The bill of sale noted the allocations of the total consideration because both buyer and seller felt such an itemization to be desirable. Although the book and face value of the accounts receivable was $41,003.80, and petitioner's basis for tax purposes therein was the same, only $25,000 of the total consideration had been allocated thereto. Such allocation resulted from arm's-length negotiations between the parties and their representatives.

On June 20, 1961, the parties first decided to value the accounts receivable at their actual rather than face value. The buyer agreed to an actual value at first because he recognized that some of the debts might be hard to collect. A few days later, however, the buyer decided that he wanted the accounts receivable value at the "amount actually due," instead of an actual current value.

Further negotiations in that area brought to light new aspects concerning the accounts receivable. Frederick was leaving the business, and many of the accounts would thereafter become difficult to collect. He had been the strong man of the business theretofore who had effected collection of accounts. It was apparent that there might well be expenses incurred in enforcing collection. Coast Coil also wanted to sell the accounts receivable at their actual value to avoid assertion by the buyer of potential offsets against the promissory notes which were to be part of the purchase price. Coast Coil therefore negotiated for a valuation equal to the collectible value in order to prevent the buyer from later claiming any offsets. It had been advised by counsel that the sale of corporate assets was a nontaxable transaction under section 337 and that the allocation of consideration in the bill of sale to be executed would have no effect on petitioner's tax liability. There was therefore no "tax savings motive" present to influence the fixing of value. Another factor taken into account was that the sale of the accounts receivable would be "without recourse."

After all points were considered and a series of negotiations and discussions had taken place, a realistic value of the outstanding balance of the accounts, roughly 60 percent, rounded to the nearest dollar amount, was assigned to the accounts receivable by the parties to the transaction. This consideration, $25,000, was stated in the bill of sale dated June 29, 1961, for petitioner's accounts receivable "(without warranty or responsibility on the part of Seller as to collection)."

The accounts receivable which were sold consisted of 41 separate accounts ranging from over $6,500 to less than $10. The record does not disclose how accurate the judgment of the parties was as to the

value assigned but at least one of the accounts with an original balance of $2,262 remained uncollected for many years, and at time of trial litigation was pending to enforce collection. The accounts were subsequently sold by McKay Manning to another corporation in 1962.

Petitioner's income tax return for the period ended June 30, 1961, reported a nontaxable gain on the sale of assets during liquidation. Included in the assets sold were accounts receivable of $41,003.80. During the audit of this return by the Internal Revenue Service, petitioner's counsel for the first time urged that a loss on the sale of these accounts was allowable under section 337. The claimed deduction was denied in the 10-day letter with the following explanation:

> The taxpayer has raised an issue relative to an allowance of a loss on accounts receivable sold as a part of all the corporate assets. Inasmuch as such property does not fall within the exceptions of Section 337(b) of the internal revenue code, no loss is allowable.

| | |
|---|---|
| Per books (accounts receivable) | $41,003.80 |
| Allocable sales price | 25,000.00 |
| Loss not recognized | 16,003.80 |

In its petition filed in this Court, Coast Coil assigned error to the Commissioner's failure to allow a loss (not claimed in the tax return) in the amount of $16,003.80 realized during the taxable year ended June 30, 1961, from the sale of certain accounts receivable, alleging, *inter alia*, that they constitute property described in section 337(b)(1)(A) of the Code.

### OPINION

In his statutory notice of deficiency, respondent disallowed a depreciation deduction taken by petitioner in its corporate income tax return for the taxable year ending June 30, 1961. In its subsequent petition to this Court, petitioner not only assigned error to respondent's failure to allow its depreciation deduction, but also alleged that it was entitled to recognize a loss deduction of $16,003.80 realized during the taxable year from the sale of certain accounts receivable. Petitioner had not recognized the loss on its return nor claimed a deduction therefor. Respondent subsequently abandoned his original disallowance of the depreciation deduction and now asserts no deficiency for the taxable year in question. Petitioner, however, maintained its claim of overpayment on account of its failure to recognize the loss. Respondent denies that petitioner suffered a loss on the sale of its accounts receivable, and further claims that even if petitioner did suffer such a loss, it is not recognizable because of section 337(a).

The burden of proof is on the petitioner to show that it realized a loss on the sale of its accounts receivable. McKay Manning agreed to pay $386,758.88 for certain of petitioner's assets after an appraisal and an examination of the books had been made. Following arm's-length and bona fide negotiations between the parties, both of whom

were knowledgeable businessmen represented by counsel throughout, the accounts receivable were assigned consideration equal to their actual value based on a realistic and fair valuation. That amount was $25,000. Their face and book value was $41,003.80, which was also petitioner's basis. While we agree with respondent that we are not bound to accept the allocation of the parties, the record convinces us that it was the substance of the transaction and a perfectly proper valuation. We therefore hold that petitioner did in fact realize a loss of $16,003.80 on the sale of its accounts receivable to McKay Manning.

Petitioner had elected to liquidate under section 337. The plan was adopted on April 25, 1961. The sale of the accounts receivable occurred on June 29, 1961. Petitioner did not recognize the loss on its final corporate income tax return for that year, it having previously been advised that no gain or loss was to be recognized. It now alleges an overpayment for that year on account of its failure to recognize the loss realized.

The sole remaining issue is whether the sale of accounts receivable comes within the nonrecognition-of-gain or -loss provisions of section 337. The problem presented is whether or not the accounts receivable are excluded from the meaning of "property" as that term is used in section 337(a).[2]

Section 337(b)[3] excludes specific items or assets from the definition of property, thereby precluding nonrecognition of gain or loss in

---

[2] SEC. 337. GAIN OR LOSS ON SALES OR EXCHANGES IN CONNECTION WITH CERTAIN LIQUIDATIONS.

(a) GENERAL RULE.—If—

(1) a corporation adopts a plan of complete liquidation on or after June 22, 1954, and

(2) within the 12-month period beginning on the date of the adoption of such plan, all of the assets of the corporation are distributed in complete liquidation, less assets retained to meet claims, then no gain or loss shall be recognized to such corporation from the sale or exchange by it of property within such 12-month period.

[3] (b) PROPERTY DEFINED.—

(1) IN GENERAL.—For purposes of subsection (a), the term "property" does not include—

(A) stock in trade of the corporation, or other property of a kind which would properly be included in the inventory of the corporation if on hand at the close of the taxable year, and property held by the corporation primarily for sale to customers in the ordinary course of its trade or business,

(B) installment obligations acquired in respect of the sale or exchange (without regard to whether such sale or exchange occurred before, on, or after the date of the adoption of the plan referred to in subsection (a)) of stock in trade or other property described in subparagraph (A) of this paragraph, and

(C) installment obligations acquired in respect of property (other than property described in subparagraph (a)). sold or exchanged before the date of the adoption of such plan of liquidation.

(2) NONRECOGNITION WITH RESPECT TO INVENTORY IN CERTAIN CASES.—Notwithstanding paragraph (1) of this subsection, if substantially all of the property described in subparagraph (A) of such paragraph (1) which is attributable to a trade or business of the corporation is, in accordance with this section, sold or exchanged to one person in one transaction, then for purposes of subsection (a) the term "property" includes—

(A) such property so sold or exchanged, and

(B) installment obligations acquired in respect of such sale or exchange.

those situations. In order therefore for the petitioner to recognize its loss, it must demonstrate that its accounts receivable were within one of the categories of excluded property under section 337(b). We hold that the accounts receivable are not property under section 337(b) and therefore the loss realized upon their sale should be recognized by petitioner; section 337(a) does not apply.

We held in *Family Record Plan, Inc.*, 36 T.C. 305 (1961), affirmed on other grounds 309 F. 2d 208 (C.A. 9, 1962), certiorari denied 373 U.S. 910 (1963), that accounts receivable are installment obligations within the meaning of section 337(b)(1)(B). In that case, the Commissioner advocated the above rule in order to uphold recognition of a gain on the sale of accounts receivable against a cash basis taxpayer. The Ninth Circuit affirmed using an anticipatory assignment of income theory, without discussing the interpretation which we had adopted.

As we noted in *Family Record Plan, Inc., supra*, section 337(b)(1) excludes installment obligations from the definition of property as used in section 337(a) ; there is, however, no definition of "installment obligations." After discussing the legislative history and particularly the Senate Finance Committee Report, S. Rept. No. 1622, 83d Cong., 2d Sess., p. 259 (1954), we concluded that: "The clear intent of Congress was that sales in the ordinary course of business would result in ordinary gain to the corporation as if it were not in the process of liquidating."

Respondent contends in this case that "installment obligations" as used in section 337(b)(1)[4] means only those obligations resulting from the sale of property which the seller has elected to report under the installment method provided in section 453. We rejected that contention *made by the petitioner* in *Family Record Plan, Inc., supra, and there objected to by respondent*, and must also reject it here. We need not repeat here what we said there. We believe the intent of section 337(b)(1)(A) and (B) is much broader than the ground covered by section 453 with reference to the obligations there involved and is designed to embrace accounts receivable arising from the sale of stock in trade by an accrual basis corporation as well. Here the taxpayer, on the accrual method of accounting, reported and paid income taxes on its sales as the accounts accrued. Later when it sold those accounts

---

[4] Here there is no suggestion, contention, or argument either in the pleadings, in the opening statements at trial, or in the briefs that subsec. 337(b)(2) is applicable or controlling or that the accounts in question are "installment obligations acquired in respect of such sale or exchange." Petitioner relies solely on subsec. 337(b)(1) in contending that the accounts receivable here involved are "installment obligations" thereby excluded. Respondent taking the opposite view from the position he urged in *Family Record Plan, Inc.*, urges that the accounts are not "installment obligations" within the exemption afforded by sec. 337(b)(1).

during liquidation it was certainly selling property excluded by section 337(b)(1) from the nonrecognition provisions of section 337 (a) (1) and (2). Respondent's position is contrary here not only to his former views but also to the congressional intent.

The taxpayer in *Family Record Plan, Inc., supra,* reported income for Federal tax purposes on the cash method. Petitioner herein used the accrual method of accounting. The rationale we used in *Family Record Plan, Inc.,* was not dependent upon any accounting method. Rather, we reached a conclusion we deemed to be harmonious with that intended by the Congress. Any sale in the ordinary course of business within the specified period following adoption of a liquidation plan should result in gain or loss to the corporation as if it were not in the process of liquidating. The accounts receivable with which we are concerned here represent consideration for sales of stock in trade in the ordinary course of petitioner's business. Thus, the accounts are a mere extension of ordinary business transactions. Had the accounts been sold under ordinary circumstances and not during the year following adoption of the plan of liquidation an ordinary loss rather than a capital loss would have been recognized. Sec. 1221(4).

We have found as a fact that the actual value of the accounts was $16,003.80 less than their face or book value. This was the loss which resulted from a sale made between knowledgeable businessmen following bona fide, arm's-length open negotiations. Since petitioner was on the accrual method, it had already recognized and reported the unreceived face value of the receivables as income. We conclude that here the sale of accounts receivable acquired in respect of the sale of stock in trade was a sale within the ordinary course of business, as intended by Congress when they framed section 337(b)(1)(B). Petitioner therefore should recognize $16,003.80 as a loss in the year of sale. *Family Record Plan, Inc., supra.* Respondent urges that our opinion in *Family Record Plan, Inc.,* has been sapped of all vitality by the opinion of the Ninth Circuit, 309 F. 2d 208, affirming on other grounds. However, as we read that opinion, the results rendered here are entirely consistent with the Ninth Circuit's approach to that case; our views were not rejected on appeal.

Cash basis taxpayers have in the past been required by the courts to recognize gain on the sale of accounts receivable during a statutory liquidation under various theories. An anticipatory assignment of income rationale is generally favored, but in light of the intent of Congress, we perceive no valid reason for different treatment for cash basis and accrual basis taxpayers. We discover no suggestion that section 337 was designed to afford diverse treatment dependent upon the accounting method used. In fact if the situation were reversed and

petitioner here were on the cash basis of accounting and had realized gain on the sale, we might well find the Commissioner urging that gain be recognized, so as to require the clear reflection of income. See *Commissioner* v. *Kuckenberg*, 309 F. 2d 202, 206 (C.A. 9, 1962), affirming in part and reversing in part 35 T.C. 473 (1960).

An alternative rationale by which we also conclude that the accounts receivable here involved are not property within the meaning of section 337 is through analogy with section 1221. In *Pridemark, Inc.* v. *Commissioner*, 345 F. 2d 35 (C.A. 4, 1965), affirming in part and reversing in part 42 T.C. 510 (1964), it was held that the heart of the definition of property in section 337 was taken from the definition of capital assets found in section 1221. Both were designed to give preferential treatment to sales of certain types of assets not held for sale in the ordinary course of business. Thus, only capital assets fall within the scope of property as defined by section 337(b)(1). Accounts receivable such as those here involved are not capital assets, and thus are not property within the meaning of that statute. Sec. 1221(4). They therefore are exempt from nonrecognition treatment under section 337, and the petitioner must recognize the loss realized upon their sale.

In *Frank W. Verito*, 43 T.C. 429, 441 (1965), we agreed with respondent that not all sales of property are covered by the nonrecognition provisions of section 337 and observed that in those cases where it had not been applied the corporation involved was trying to convert ordinary income into capital gain. Here petitioner, an accrual basis taxpayer, has already reported all of the trade accounts receivable it sold in 1961 as ordinary income and has paid income tax thereon, if any was due. There is no attempt to convert ordinary income into capital gain under such circumstances and the sale of such trade accounts in 1961 resulted in ordinary loss not capital loss, under section 1221(4). We held in *Verito* that where certain assets would be considered capital within the meaning of section 1221(1), they would be "property" within section 337(b)(1). The converse of that rule would require the holding that trade accounts receivable, not being capital assets, are not "property." Therefore, the accounts receivable here involved do not qualify for the nonrecognition treatment of section 337.

For the foregoing reasons and because we conclude that the spirit of section 337 dictates inclusion of trade accounts receivable within the phrase "installment obligations" as used in section 337(b)(1)(B), we conclude and hold that the loss realized on their sale in 1961 is to be recognized by petitioner.

*Decision will be entered under Rule 50.*