**MIDLAND–ROSS    CORPORATION,**
Transferee of Surface Combustion
Corporation, Plaintiff,

v.

**UNITED STATES of America,**
Defendant.

**Civ. A. No. C 68–462.**

United States District Court,
N. D. Ohio, E. D.

Nov. 7, 1972.

Bruce J. Havighurst, Henry C. Harvey, Wallace M. Wright, of Jones, Day, Cockley & Reavis, Cleveland, Ohio, for plaintiff.

Robert J. Campbell, Tax Division, Civil Branch, Department of Justice, Washington, D. C., for defendant.

## MEMORANDUM AND ORDER

WILLIAM K. THOMAS, District Judge.

Plaintiff, Midland-Ross Corporation, as transferee and successor of Surface Combustion Corporation, sues for a refund of federal income taxes paid as a result of the disallowance of a deduction by the District Director of certain business expenses paid in connection with the sale, upon liquidation, of Surface's assets to Midland, and a further disallowance of a depreciation deduction taken by Surface. As to a gain of Surface in the sale of its assets to Midland, the Government claims income tax is due while Midland asserts non-recognition under 26 U.S.C. § 337. This remaining issue is raised by the Government's affirmative defense of set off because the statute of limitations on further assessment of income taxes against Midland, as transferee of Surface, for the calendar year 1959 has expired.

Subsequent to the filing of the complaint the parties stipulated that the business expenses were not proper deductions and the United States has now acknowledged that the disallowance of the depreciation deduction was erroneous. The affirmative defense, if sustained, would produce an income tax indebtedness of Surface that would exceed the amount of refund to which Midland, as transferee, is concededly entitled.

Sometime prior to November 9, 1959, Surface adopted a plan of complete liquidation and within 12 months thereafter, by a sale of its assets to Midland, Sur-

face completely liquidated its business and distributed the assets (cash) to its stockholders. Midland assumed all of the liabilities, including tax liabilities, of Surface.

Part of the property purchased by Midland was long term uncompleted, but partially performed, contracts entered into by Surface with various purchasers. During a period commencing prior to April 1, 1953, and ending with the sale of its assets to Midland, the business of Surface consisted in substantial part of the design, manufacture, and installation of heat treat equipment, principally for the metals and glass industries, under contracts which required progress payments as the work proceeded. These long term contracts from their inception to their completion frequently covered periods in excess of one year. Over the years Surface consistently reported the gross income derived from these long term contracts in the taxable years in which such contracts were completed and accepted. 26 C.F.R. § 1.451–3(b)(2). In its return for the taxable year ended March 31, 1960, Surface similarly reported the gross income derived from long term contracts which were in process on March 31, 1959, and which were completed prior to the sale of its properties on November 9, 1959.

From 1953 until its dissolution in 1959, in accordance with the completed contract method of accounting, Surface did not accrue or report any income from any long term contracts until their completion, and it did not deduct or reflect as cost of sales any portion of accumulated costs and expenses. The same is true of the long term contracts sold to Midland.

Surface's total accumulated costs under such contracts were $5,357,010.00. Midland, based on the past performance of Surface, estimated that portion of the profit already earned on the contracts as $1,344,191.00. Adding these two sums, Midland computed and reported on its books $6,701,200.00 as the fair market value of these uncompleted contracts. Under 26 U.S.C. § 337, Midland contends that Surface was entitled to non-recognition of the gain.

With the stipulation of all essential facts, the issue is one of law. Upon corporate liquidation under Section 337 does it allow the non-recognition of gain realized by the sale of long term, uncompleted but partially performed contracts by a taxpayer-transferor who reports income on a completed contract basis? Because the issue raised by the Government's affirmative defense is solely one of law there is no need to determine whether the burden of proof still rests upon the taxpayer in accordance with the usual rule. Hodoh v. United States, 153 F.Supp. 822 (N.D.Ohio 1957).

I.

With respect to corporations liquidating under the conditions of Section 337(a)(1) and (2)[1] "no gain or loss

---

1. § 337. Gain or loss on sales or exchanges in connection with certain liquidations
   (a) General rule.—If—
     (1) a corporation adopts a plan of complete liquidation on or after June 22, 1954, and
     (2) within the 12-month period beginning on the date of the adoption of such plan, all of the assets of the corporation are distributed in complete liquidation, less assets retained to meet claims, then no gain or loss shall be recognized to such corporation from the sale or exchange by it of property within such 12-month period.

   (b) Property defined.—
     (1) In general.—For purposes of subsection (a), the term "property" does not include—
     (A) stock in trade of the corporation, or other property of a kind which would properly be included in the inventory of the corporation if on hand at the close of the taxable year, and property held by the corporation primarily for sale to customers in the ordinary course of its trade or business.
     \*     \*     \*     \*     \*
     (2) Nonrecognition with respect to inventory in certain cases.—Notwithstand-

shall be recognized to such corporation from the sale or exchange by it of property within such 12-month period." Surface complied with the foregoing conditions in effecting its liquidation. Claiming non-recognition as to the gain from the long term contracts transferred to it by Surface, Midland-Ross contends:

> The partially completed items of equipment under construction by Surface and the contractual rights to receive payment for them, upon completion were undoubtedly property within the accepted general meaning of that term.

Midland states that the rights to complete the long term contracts and collect the contract price "do not fall within any of the statutory exceptions [337(b)(1)(A)] to the term 'property,'" specifically set forth. It then argues,

> Thus (except for specific exclusions) neither the statute [337] nor the regulations [26 C.F.R. 1.337–3(a)] limit the broad meaning of "property."

On its face Section 337 appears only to limit the term "property" by the specific exclusions of Section 337(b)(1) (A). After making the same statutory exceptions, Treasury Regulation 1.337–3 (a) defines property as including "all assets owned by a corporation."

Plaintiff then argues that "no suggestion appears in the Congressional Committee report" that the broad meaning of "property" is limited. Actually, the Committee Reports contain no definition of the term "property." The legislative history, as shown in 3 U.S.Code, Cong. & Adm.News at p. 4244 et seq. and p. 4896 et seq., 83 Cong., 2d Sess.1954, discloses that Section 337 was enacted to "provide a definitive rule which will eliminate the present uncertainties" creating paragraph (1) of this subsection, if substantially all of the property described in subparagraph (A) of such paragraph (1) which is attributable to a trade or business of the corporation is, in accordance with this section, sold or exchanged to one person in one transaction, then for purposes of subsection (a) the term "property" includes—
(A) such property so sold or exchanged, and
(B) installment obligations acquired in respect of such sale or exchange.

ated by the decisions in Comm'r. v. Court Holding Co., 324 U.S. 331, 65 S. Ct. 707, 89 L.Ed. 981 (1945) and United States v. Cumberland Public Service Co., 338 U.S. 451, 70 S.Ct. 280, 94 L.Ed. 251 (1950).

The issue in each of those cases was whether the shareholders or the corporation "effected a sale of property" in connection with a corporate liquidation. "Form" of the transaction was important because a distribution of corporate assets, in kind, was not a taxable event for the corporation, but was for the shareholders. However, a conversion of corporate assets into cash resulted in a corporate taxable event and its subsequent distribution to shareholders was also a taxable event for them. See Buckeye Union Casualty Co. v. Comm'r., 448 F.2d 228, 230 (6 Cir. 1971). Congress was aware of those different tax consequences (See, 3 U.S.Code, Cong. & Adm.News, supra, p. 4896) and its evident purpose in enacting Section 337 was "to provide a definitive rule" eliminating the uncertain but distinct possibility of double taxation imposed on both the liquidating corporation and its shareholders.

Section 337's single purpose of "reliev[ing] a tax inequity" is stressed in Lanrao, Inc. v. United States, 288 F. Supp. 464 (E.D.Tenn.1968) aff'd 422 F. 2d 481 (6 Cir. 1970). It was there found that Section 337 was *not intended to change the prior rule* governing another aspect of the disposition of property upon liquidation. See, also, Comm'r. v. Anders, 414 F.2d 1283 (10 Cir. 1969). In affirming, the Court of Appeals stated it agreed "with the conclusion of the District Court for the reasons set forth" in the district judge's opinion. In part, District Judge Frank W. Wilson stated,

Since the purpose of the legislation was to relieve a tax inequity, it would be to pervert that purpose for a Court to interpret the legislation as having converted capital selling expenses into ordinary and necessary business expenses where corporate assets are sold by the corporation in a dissolution rather than being distributed in kind and sold by the stockholder.

■ Plaintiff contends that

To make exceptions or additions to those made by Congress and to exclude from the term, any other items, tangible or intangible, which are commonly recognized as property, would be judicial legislation of the most extreme sort.

Were the concept of "property," as used in Section 337 not readily identifiable, plaintiff's contention might have some merit. However, that concept has as precise a meaning under Section 337 as it has under Section 1221.

The heart of the definition of "property" in section 337 was taken almost verbatim from the definition of capital assets . . . now found in section 1221. . . . We interpret them as having the same meaning. Pridemark, Inc. v. Comm'r, 345 F.2d 35, 45 (4 Cir. 1965).

See also, Messer v. Comm'r, 438 F.2d 774, 780 n. 11 (3 Cir. 1971). The draftsmen of Section 337 well understood the meaning of property as used in Section 337. An examination of the two sections suggests that result.

Finding the concept of property the same in Sections 1221 and 337, the Supreme Court's analysis of "property" in Comm'r v. Gillette Motor Transport, Inc., 364 U.S. 130, 80 S.Ct. 1497, 4 L. Ed.2d 1617 (1960) offers guidance in interpreting Section 337. Construing Section 117 (now 1221), the Supreme Court did not analyze that similar statute in terms of a simple exclusion-inclusion approach. Rather, it found that even though Gillette's property was not specifically excluded from the definition, it still did not qualify as a capital asset.

With the limited congressional purpose in mind, the Court stated at 134, 80 S. Ct. at 1500:

It is evident that not everything which can be called property in the ordinary sense and which is outside the statutory exclusions qualifies as a capital asset.

Similarly, in the instant case, merely because a described property is not specifically excluded from the definition of property in Section 337(a), such omission alone does not mean that everything, save the exclusions of Section 337(b), must be property within the meaning of Section 337(a).

In essence, plaintiff's contention is that if the transaction does not fall within the specific exceptions of Section 337(b) then the gain is non-recognizable under Section 337(a). However, that approach to the problem misconceives the reach of Section 61(a). Income from "whatever source" is subject to the tax unless specifically declared non-recognizable. Thus, gain on the sale is taxable unless the transaction falls within Section 337(a). The analysis of Part I leads finally to the conclusion that subdivision (a) of Section 337 and likewise Treasury Regulation § 1.337-3(a) are not to be interpreted as providing non-recognition in all instances save those specifically enumerated in subdivision (b).

## II.

Relying on the additional non-recognition dispensation of Section 337(b)(2) and the stipulation that Midland purchased substantially all of Surface's assets in one transaction, plaintiff maintains that "the heat treat equipment under construction by Surface was actually the same as the inventory of a conventional manufacturer." This contention is based on a faulty premise. What Midland purchased were the *contracts* and not the heat treat equipment.

■ As the Government notes, "these long term contracts cover *items which have been sold to customers* in the ordi-

nary course of business, while inventory is only the work in process looking toward the future sale." The bricks, mortar, concrete, and steel that are incorporated into a partially constructed heat treat furnace, constructed on the premises of another, under a long term contract is in a literal sense work in process, but it is hardly classifiable as inventory. It is an attribute of inventoriable goods in process that title remains in the seller. An element of title is exclusive control over the goods. This element of exclusive control is absent when a partially erected heat treat furnace is affixed to the land of a customer.

Surface employed the completed contract method of accounting for its taxable income. In ascertaining income under the completed contract method property of a kind which would properly be included in the inventory of the corporation if on hand at the close of the taxable year may not be considered as inventory. In Merten's Law of Federal Income Taxation, Vol. 2, § 12.130 the author states:

A taxpayer who reports income from long term contracts on the completed contract method may not consider as inventory, the cost of materials, labor, supplies, depreciation, travel, etc., accumulated with respect to such contracts. Such costs merely represent deferred expenditures which are to be treated as part of the cost of the particular contract and are to be allowed as a deduction for the year during which the contract is completed and the contract price reported as gross income.

Certainly, even a true accrual basis taxpayer could not denominate as inventory all such costs as are associated with these contracts. The most obvious costs which remove these contracts from the category of inventory and are a substantial part of the deferred costs under the contract, are labor and depreciation. It is inconsistent with its method of tax reporting to treat as inventory these long term contracts.

Plaintiff relies heavily on Luff Co., 44 T.C. 532 (1965). In that case the corporation accomplished liquidation under Section 337 and sold its assets, including its factory, to a new corporation. Under numerous separate contracts the old corporation was fabricating to specific orders small tools, jigs, and dies at the time of its liquidation. The new corporation took over the premises and equipment, and continued to employ the old corporation's former employees. The new corporation completed 75 contracts covering items in process of fabrication. Upon completion monies received from customers were apportioned between the new and the old corporations.

The tax court determined that work-in-process was inventory under Section 337(b)(1) and further that the old corporation sold it to the new corporation as a bulk sale. It ruled that the profit apportioned to the old corporation was entitled to non-recognition under Section 337(b)(2). The Commissioner argued that the takeover agreement between the two corporations did not provide for sale of the work-in-process but was in the nature of a joint venture. The case turned on this issue alone and the tax court determined that the transaction involved a sale and not a joint venture.

Significantly, the contracts for the production of tools, jigs, and dies were *not* long term contracts and the income was *not* being reported on a completed contract method of accounting as is true in the present case. Under this latter method of accounting annual inventories do not exist; and therefore, work in process could not be treated as inventory.

Finally, *Luff, supra* ignores the question, important here, of what was sold by the old corporation. Assuming it was a bulk sale, as taxpayer claimed, and not a joint venture, as the Government claimed, the question still remains whether it was the contracts that were sold or the work in process. If it were the contracts, then they could not qualify as inventory or property held primarily for sale to customers in the ordinary

course of business; and the gain from the sale of the contracts would have been ordinary income. If it were work-in-process, as the court implies, then the court must have believed that the old corporation retained title to the work-in-process—a key fact which would distinguish the uncompleted tools in *Luff* from the uncompleted heat treat equipment in the present case.

In the instant case, Surface was engaged in the business of contracting for and designing, manufacturing, and installing heat treat equipment. The stipulation reveals that the profits from those contracts were always reported as ordinary income in the years in which the contracts were completed. Other than reliance on the non-recognition provisions of Section 337(a) or (b)(2), plaintiff advances no other reason why the profit on their sale to Midland (actually realized upon liquidation, though technically postponed because of Surface's accounting system) should not remain and be recognized as ordinary income. Midland's determination that "$1,344,191 . . . represented a *portion* of the total estimated profit to be earned upon completion of the contracts" was actually a determination that as of the date of liquidation that amount represented the ordinary gain already earned by Surface under the contracts.

■■ The fiction created when an accrual basis taxpayer adopts the completed contract method of reporting income, even though progress payments are made, must be indulged in. Thus, even though Surface received progress payments, for tax purposes, it is deemed as not having received anything until the year of completion. However, when a corporation using the completed contract method of accounting liquidates, it no longer retains the right to report income on that basis. The intervening act of liquidation is the event which fixes its right to receive this ordinary income. In its tax year of 1959, Surface received the amount of an item of gross income ($6,701,201) which included an unreported profit of $1,344,191.00, 26 U.S.C. § 451(a). Upon liquidation its present right to future income matured and Surface realized ordinary income.

■ Thus, Surface's accrued right to income under those contracts was accelerated and converted into present income of $1,344,191.00. Had Surface received the income at the time the contracts were completed it would have been ordinary income. It does not lose that character because the time of its receipt was anticipated and accelerated. See Jud Plumbing & Heating Co. v. Comm'r, 153 F.2d 681 (5 Cir. 1946); J. M. Turner & Co. v. Comm'r, 247 F.2d 370, 373 (4 Cir. 1957); 2 Merten's Law of Federal Income Taxation, *supra* § 12.134.

■ Further relying on the Section 337(b)(2) bulk sale exception to 337(b)(1), plaintiff contends that while the "heat treat equipment" might not be regarded as stock in trade or inventory "how can it escape being property held primarily—in fact, solely—for sale to customers in the ordinary course of Surface's business." The thrust of this argument, however, misconceives what it is that was actually sold by Surface to Midland. It was not a sale of heat treat equipment, for that had already been sold to the purchasers; and Midland, under its contract with Surface, had assumed the duty to complete the unfinished equipment for the original purchasers. Surface could not sell the identical heat treat equipment twice.

What Surface sold to Midland were contracts representing a series of various deferred expenses, a duty to continue performance, a right to earn and receive the remaining profit, and for tax purposes the profit already earned but not reported by Surface. The contracts, while literally property, are not and do not resemble the type of assets contemplated by the phrase "property held . . . primarily for sale to customers in the ordinary course of its . . . business." While those contracts were born of Surface's ordinary business, their subsequent sale was neither its primary nor ordinary business. For

these reasons this court concludes that the contracts are not property held primarily for sale to customers in the ordinary course of its business.

Having determined that the long term contracts sold by Surface to Midland-Ross were neither "inventory" nor "property" held by the corporation primarily for sale to customers in the ordinary course of business, it is, therefore, further determined that the long term contracts do not fall within Section 337(b)(2). Reasonably construing Section 337, it is determined that the "property" whose gain shall be subject to non-recognition does not include ordinary income unless it falls within Section 337(b)(2).

For all the foregoing reasons it is determined that the long term contracts, not falling within Section 337(b)(2), are not "property" whose sale is subject to non-recognition under Section 337(a); and are, therefore, taxable as ordinary income under 26 U.S.C. § 61(a). As a matter of law the Government's second affirmative defense of set off is sustained. Judgment for the defendant is therefore entered.

It is so ordered.