**MIDLAND-ROSS CORPORATION, TRANSFEREE OF SURFACE COMBUSTION CORPORATION, Plaintiff-Appellant,**

v.

**UNITED STATES of America, Defendant-Appellee.**

**No. 73–1100.**

United States Court of Appeals, Sixth Circuit.

Argued June 7, 1973.

Decided Sept. 27, 1973.

Henry C. Harvey, Cleveland, Ohio, for plaintiff-appellant; Bruce J. Havighurst, Jones, Day, Cockley & Reavis, Cleveland, Ohio, on brief.

Ernest J. Brown, Dept. of Justice, Washington, D.C., for defendant-appellee; Scott P. Crampton, Asst. Atty. Gen., Meyer Rothwacks, Attys., Tax Div. Dept., of Justice, Washington, D.C., on brief.

Before CELEBREZZE and McCREE, Circuit Judges, and MOYNAHAN,* District Judge.

* The Honorable Bernard T. Moynahan, Jr., Chief Judge, United States District Court for the Eastern District of Kentucky, sitting by designation.

CELEBREZZE, Circuit Judge.

This is an appeal from the District Court's final judgment for the Government in a suit under 28 U.S.C. § 1346(a)(1) by Midland-Ross Corporation (Midland) seeking a refund of income taxes paid by Midland as transferee of Surface Combustion Corporation (including the latter's tax liabilities) for Surface's fiscal year ended March 31, 1960.

In its complaint Midland sought a refund of $113,029 plus interest paid by Midland after the Commissioner disallowed certain depreciation deductions claimed by Surface for the above tax year. The Government's answer asserted, *inter alia,* an affirmative defense of set off in the form of a tax liability on Surface's gross profits for work in process of $1,344,191, for which profits Midland claimed nonrecognition under 26 U.S.C. § 337.[1] Prior to trial, the Government conceded that the disallowance of depreciation was erroneous. Because the tax liability asserted in the Government's affirmative defense would be greater than the refund to which Midland was otherwise entitled, the sole issue before the District Court was whether the above profits fell within the nonrecognition provisions of 26 U.S.C. § 337.

For several years preceding the tax year in question, Surface's principal business was the design, manufacture, and installation of heat treat equipment under contracts with various customers in the metal and glass industries. Full performance of each contract frequently required a period in excess of one year, and the contracts usually called for progress payments as Surface's work proceeded. Under the completed-con-

tract method of accounting, 26 C.F.R. § 1.451–3(b)(2), Surface consistently reported gross income from each of these contracts only in the year in which the contract was completed and accepted and similarly deducted costs and expenses allocable to each contract in said year of completion.

Having adopted a plan of complete liquidation, Surface sold substantially all of its properties and assets to Midland on November 9, 1959, with Midland assuming all the debts and liabilities of Surface, including liabilities for federal income taxes. Within 12 months after adoption of its plan of liquidation, Surface distributed the proceeds of this sale to its shareholders in cancellation and redemption of its stock.

Among the assets sold to Midland were certain uncompleted, but partially performed, long-term contracts between Surface and its customers for the design, manufacture, and installation of heat treat equipment, as described above. Prior to the date of sale, Surface had incurred accumulated costs and expenses totalling $5,357,010 in partially performing these contracts. Based on Surface's past business experiences under such contracts, it was estimated that $1,344,191 represented the portion of the total expected profits which Surface had earned through its partial performance. By adding these two amounts (costs and expenses plus estimated partial profits), the parties arrived at a fair market value of $6,701,200 for the uncompleted, long-term contracts. This fair market value—less the amount of progress payments received by Surface prior to the sale—was recorded by Midland as a portion of the total purchase price allocable to the uncompleted, long term contracts.[2]

1. This tax liability was asserted solely by means of the Government's affirmative defense of set off in the present suit, rather than by direct assessment, in that the statute of limitations, 26 U.S.C. § 6501, for further assessments had run when the complaint was filed. *See generally* Lewis v. Reynolds, 284 U.S. 281, 52 S.Ct. 145, 76 L. Ed. 293 (1932); Springfield Street Ry. Co.

v. United States, 312 F.2d 754, 758, 160 Ct. Cl. 111 (1963).

2. The fair market value of the uncompleted, long-term contracts was actually added to what was apparently deemed the fair market value of certain uncompleted, short-term contracts (the gain from which has not been raised as an issue in this case), and the sum

Pursuant to its completed-contract method of accounting, Surface had neither taken income tax deductions for the accumulated costs and expenses incurred prior to the sale of the uncompleted, long-term contracts, nor had it reported any gross income from those contracts. Moreover, in its income tax return for its fiscal year ended March 31, 1960, which covered the November 9, 1959, sale to Midland, Surface reported no gross income from the sale of these contracts to Midland.

In its affirmative defense of set off against Midland's suit for refund, the Government asserted that Surface erroneously failed to report as ordinary income the above-described $1,344,191 in profits arising from its sale of the un-completed, long-term contracts to Midland. Midland, on the other hand, contends that these profits were entitled to nonrecognition as gain from the sale of property in complete liquidation under 26 U.S.C. § 337, the pertinent provisions of which are set forth in the margin.[3]

In its Memorandum, reported at 352 F.Supp. 1287, the District Court noted the similarity in the definition of "property" in Section 337 and the definition of capital assets in 26 U.S.C. § 1221, and reasoned that, with the exception of the property described in subsection 337(b)(2), Section 337 was not intended to apply to property the sale of which yields ordinary income to the corporation. After determining that the uncompleted, long-term contracts at issue

---

of these values was then reduced by the total amount of progress payments received by Surface on both types of uncompleted contracts prior to the sale, yielding an actual cash payment by Midland of $122,939.34 for both the long-term and the short-term uncompleted contracts, as follows:

| Assets | | Allocated Amount |
|---|---|---|
| Contracts in Process | | |
| Long Term | $6,701,201.00 | |
| Short Term | 816,875.00 | |
| | $7,518,076.00 | |
| Less: Progress billings on contracts in process | 7,395,136.66 | $122,939.34 |

3. § 337. *Gain or loss on sales or exchanges in connection with certain liquidations*
*(a) General rule.*—If—
 (1) a corporation adopts a plan of complete liquidation on or after June 22, 1954, and
 (2) within the 12-month period beginning on the date of the adoption of such plan, all of the assets of the corporation are distributed in complete liquidation, less assets retained to meet claims,
then no gain or loss shall be recognized to such corporation from the sale or exchange by it of property within such 12-month period.
*(b) Property defined.*—
 *(1) In general.*—For purposes of subsection (a), the term "property" does not include—

(A) stock in trade of the corporation, or other property of a kind which would properly be included in the inventory of the corporation if on hand at the close of the taxable year, and property held by the corporation primarily for sale to customers in the ordinary course of its trade or business,
(B) installment obligations acquired in respect of the sale or exchange (without regard to whether such sale or exchange occurred before, on, or after the date of the adoption of the plan referred to in subsection (a)) of stock in trade or other property described in subparagraph (A) of this paragraph, and
(C) installment obligations acquired in respect of property (other than property described in subparagraph (A)) sold or exchanged before the date of the adoption of such plan of liquidation.

*(2) Nonrecognition with respect to inventory in certain cases.*—Notwithstanding paragraph (1) of this subsection, if substantially all of the property described in subparagraph (A) of such paragraph (1) which is attributable to a trade or business of the corporation is, in accordance with this section, sold or exchanged to one person in one transaction, then for purposes of subsection (a) the term "property" includes—
(A) such property so sold or exchanged, and
(B) installment obligations acquired in respect of such sale or exchange.

were neither inventory nor property held by the corporation primarily for sale to customers in the ordinary course of its trade or business so as to qualify for the bulk sale provisions of subsection 337(b)(2), the District Court concluded that Surface was required to recognize the profits from the sale of these contracts to Midland. The Court therefore sustained the Government's affirmative defense of set off against Midland. We affirm, albeit for somewhat different reasons.

■ Initially, we note the Government's argument before us that this case presents a parallel to this Court's decision in Buckeye Union Casualty Co. v. Commissioner, 448 F.2d 228 (6th Cir. 1971), wherein the release of certain unearned premiums through a reinsurance agreement was held to have not constituted gain from the sale or exchange of property under Section 337.[4] We believe that the gain at issue here, in the form of estimated profits deemed to have been earned by Surface through its partial performance of the contracts, can safely be said to have arisen from the sale of those contracts.[5]

■ We also note our agreement with the District Court's conclusion that the uncompleted, long-term contracts sold by Surface were neither inventory nor property held primarily for sale to customers, as described in subsection 337(b)(1)(A) and referred to in subsection (b)(2). See, 352 F.Supp. at 1291-1294. To this we merely add that these contracts were not "installment obligations" under subsection 337(b)(1)(B) or (C) (even under the broadest inter-

pretations of that term; see note 6 infra), and they thus do not fall within any of the express exclusions from the term "property" under Section 337. We therefore focus upon the District Court's rationale that, beyond the express exclusions, no ordinary-income-producing items are to be included within the term "property" under Section 337, with the exception of those specified in subsection (b)(2).

The scope to be afforded to the nonrecognition provisions of Section 337, or more accurately, the means of determining that scope, has been a subject of considerable uncertainty. In its definition of "property", subsection 337(b) appears to specifically set forth the only types of gain which Congress intended to exclude from nonrecognition under the statute. Indeed, the Regulations support this view, stating that "[w]ith the exceptions listed in [subsection (b)] the term 'property' includes all assets owned by a corporation." Treas. Reg. § 1.337-3(a) (1955).

■ Reference to the legislative history of Section 337, however, suggests that its seemingly clear language does not fully comport with its purpose. Section 337 was enacted to eliminate the formalism created by the holdings in Commissioner v. Court Holding Co., 324 U.S. 331, 65 S. Ct. 707, 89 L.Ed. 981 (1945), and United States v. Cumberland Public Service Co., 338 U.S. 451, 70 S.Ct. 280, 94 L.Ed. 251 (1950), by establishing a parity of tax treatment at the corporate level whether a liquidating corporation sells its assets and thereafter distributes

---

4. In this argument, which was not presented to the District Court, the Government analogizes the progress payments received and retained by Surface under the uncompleted contracts (see note 2, supra.) with the unearned premiums released to the Old Buckeye Companies as a result of the reinsurance agreement. As should be evident from subsequent portions of this opinion, the fact that Surface received substantial progress payments under the contracts at issue is irrelevant in our considerations under Section 337.

5. But see Anders v. United States, 462 F.2d 1147, 1149 (Ct.Cl.), cert. denied, 409 U.S. 1064, 93 S.Ct. 557, 34 L.Ed.2d 517 (1972) (gain on the sale of previously expensed rental items "was not realized from the 'sale,' but rather from reconverting the previously expensed items into 'property'"); Central Building & Loan Ass'n, 34 T.C. 447, 451 (1960) (accrued interest realized on the sale of note obligations did not arise from the sale, but rather constituted "receipt and collection" of the interest; see note 6, infra).

the proceeds to its shareholders in complete liquidation or, conversely, distributes its assets in kind to its shareholders in complete liquidation for sale by them. *See* S.Rep.No.1622, 83d Cong.2d Sess., at 258; [1954] 3 U.S.Code Cong. & Adm. News at 4896. *See also* Buckeye Union Casualty Co. v. Commissioner, 448 F.2d 228, 230 (6th Cir. 1971); Commissioner v. Kuckenberg, 309 F.2d 202, 205–206 (9th Cir. 1962), cert. denied, 373 U.S. 909, 83 S.Ct. 1296, 10 L.Ed.2d 411 (1963); Frank W. Verito, 43 T.C. 429, 438–40 (1965); B. Bittker & J. Eustice, Federal Income Taxation of Corporations and Shareholders, para. 11.64 at 11–58 (3d ed.1971).

Standing alone, the language of the statute does not appear to fully serve this purpose. Obvious problems arise in the context of a liquidating corporation's sale of receivables and other rights to income already earned, but not yet received, which are not expressly excluded from Section 337's nonrecognition provisions except to the extent of the installment obligation exclusion appearing in subsections (b)(1)(B) and (C). If such receivables and other rights to income were distributed in kind to a liquidating corporation's shareholders and thereafter sold by them so as to satisfy the *Cumberland Public Service Co.* holding, any gain from the sale would most certainly be attributed to the corporation under the assignment of income doctrine, notwithstanding the nonrecognition provisions of 26 U.S.C., § 336 for such distributions of assets in kind. *See, e. g.,* Wood Harmon Corp. v. United States, 311 F.2d 918, 921–926 (2d Cir. 1963); Williamson v. United States, 292 F.2d 524, 528–530, 155 Ct.Cl. 279 (1961). Yet, if the application of Section 337 were restricted only to the extent of its express exclusions, gain from the corporation's sale of these same assets within the statutory period would escape recognition by the corporation. Indeed, if carried to its extreme, this approach would afford Section 337's nonrecognition to gain from a corporation's sale of receivables arising from the prior sale of even those assets which are expressly excluded from the statute, such as inventory items, thus permitting a corporation to bring all gain within the nonrecognition provisions of the statute. *See* Note, Tax-Free Sales in Liquidation Under Section 337, 76 Harv.L.Rev. 780, 790–91 (1963).

In an effort to avoid these results under Section 337, the Courts have adopted several approaches which restrict the statute's scope more narrowly than do its express exclusions.[6] Accordingly, the District Court ruled that "the 'property' whose gain shall be subject to non-recognition does not include ordinary income [property] unless it falls within Section 337(b)(2)." 352 F.Supp. at 1294. Thus, with the exception of bulk sales specified in subsection (b)(2), the District Court would presumably exclude from Section 337 any property which would yield ordinary income, rather than capital gains, if sold outside of Section 337. Without attempting to fully explore the operation and effects of such a rule under the

---

6. Attempting to adhere to the express exclusions found in Section 337(b) and the Regulations thereunder [Treas.Reg. § 1.337–3(a) (1955) (discussed above)], the Tax Court has averted the above results by holding that accounts receivable constitute "installment obligations" under subsection 337(b)(1), Family Record Plan, Inc., 36 T.C. 305 (1961), aff'd on other grounds, 309 F.2d 208 (9th Cir. 1962), cert. denied, 373 U.S. 910, 83 S.Ct. 1297, 10 L.Ed.2d 411 (1963); Sarah G. Wimp, 20 CCH Tax Ct. Mem., Dec. 25,187(M) (1961), and that the realization of accrued interest upon note obligations which were sold by a corporation pursuant to Section 337 are outside the nonrecognition provisions of the statute because the gain arose not from the sale or exchange of the notes, but rather from what the Tax Court termed the "receipt and collection of interest" from the purchaser. Central Building & Loan Association, 34 T.C. 447, 451 (1960). *See also* Coast Coil Co., 50 T.C. 528 (1968), aff'd, 422 F.2d 402 (9th Cir. 1970) (holding that the liquidating corporation could recognize a loss incurred in the sale of accounts receivable, which were deemed to be "installment obligations" as in *Family Record Plan, Inc., supra*).

statutes governing capital gains and losses, 26 U.S.C. § 1201 et seq., we simply observe that this approach would deny Section 337's nonrecognition to property used in the trade of business, as described in Section 1221(2), but held 6 months or less, and to copyrights, literary compositions, etc., as described in Section 1221(3) [7] whereas these same assets would in most cases escape recognition if distributed in kind under Section 336. *See* B. Bittker & J. Eustice, *supra*, para. 11.65, at 11–71. This rule also fails to suggest any plausible explanation for the fact that in subsection 337(b)(2) Congress chose to afford nonrecognition to bulk sales of inventory and property held primarily for sale to customers, notwithstanding the fact that these bulk sales would yield ordinary income if sold outside Section 337. Moreover, the District Court's rule appears to infer its inverse, *i. e.*, that any property which would yield capital gains if sold outside Section 337 is to be afforded the statute's nonrecognition; however, under appropriate circumstances, capital gains can be attributed to a corporation distributing its assets in kind under Section 336. *See* Wood Harmon Corp. v. United States, 311 F.2d 918, 921–926 (2d Cir. 1963).

These problems will attend any rule which attempts to prescribe the scope of Section 337 through reference to capital assets, as defined in Section 1221, to property afforded capital asset treatment under Sections 1221 and 1231, or to capital gains resulting from such treatment.[8] These approaches have their basis in the fact that the types of property expressly excluded from Section 337 in subsection (b)(1)(A), *i. e.*, inventory and property held primarily for sale to customers, are identical to the types of property expressly excluded from the definition of capital assets in Section 1221(1). Thus, so the argument goes, since Congress borrowed a portion of the definition of capital assets in Section 1221 as the "heart of the definition of 'property'" under Section 337, it must have intended that only capital assets would be encompassed in the latter term.[9] Pridemark, Inc. v. Commissioner, 345 F.2d 35, 45 (4th Cir. 1965). *See also* Messer v. Commissioner, 438 F.2d 774, 780 (3d Cir. 1971); Coast Coil Co., 50 T.C. 528, 535 (1968) (alternate holding), aff'd, 422 F.2d 402 (9th Cir. 1970). *Cf.* Hollywood Baseball Ass'n v. Commissioner, 423 F.2d 494, 499–500 (9th Cir.), cert. denied, 400 U.S. 848, 91 S.Ct. 35, 27 L.Ed.2d 85 (1970) (excluding *Corn Products*-type assets).

We believe that these approaches to Section 337 are based on the erroneous notion that, by adopting the language found in subsection (b)(1)(A), Congress intended to supply mere examples of a broad class of property (*i. e.*, noncapital or noninvestment) which, for some unstated reason, would be excluded from the statute's nonrecognition provisions—notwithstanding the fact that the nonrecognition afforded to distributions in kind under Section 336 is governed by no comparable restrictions.[10]

7. Both types of property described in the text are excluded from the definition of a capital asset under Section 1221, and neither is afforded capital asset treatment under Section 1231.

8. While the District Court's rule expands the scope of Section 337 beyond the strict Section 337—1221 analogy and thereby would result in a greater parity between Sections 336 and 337, we believe that the analogy itself, in which the rule has its basis, is erroneous.

9. Presumably, had it so chosen, Congress could have incorporated under Section 337(b)(1) the full definition of a capital asset appearing in Section 1221, so as to expressly exclude from the former depreciable and real property used in the trade or business, copyrights, etc., accounts and notes receivable, and discounted government obligations, as described in subsections (2) through (5) of the latter. The rationale cited in the text, however, would suggest that Congress left this simple task of transcription to the Courts.

10. Section 336 simply provides as follows:
"Except as provided in section 453(d) (relating to disposition of installment obligations), no gain or loss shall be recognized to a corporation on the distribution of property in partial or complete liquidation."
As noted throughout this opinion, a corporation may be required to recognize gain on

A reasonable reading of the statute in light of its limited legislative history suggests that in adopting the language of subsection 337(b)(1)(A), Congress intended nothing more than to exclude from the statute's nonrecognition provisions gain or loss from a corporation's sales in the ordinary course of its business during the 12-month period. After setting forth the primary purpose to be served by Section 337 (*i. e.*, elimination of the *Court Holding Co.—Cumberland Public Service Co.*, formalism) and in explanation of the nonrecognition afforded to bulk sales of inventory and property held primarily for sale to customers under subsection (b)(2), the Senate Report reads as follows:

"It is intended that, during the 12-month period, sales in the ordinary course of business shall result in ordinary gain to the corporation as if the corporation were not in the process of liquidating." S.Rep.No.1622, 83d Cong., 2d Sess.; [1954] 3 U.S.Code Cong. & Adm.News at 4897.

It appears that this intent of Congress led to its adoption of the language appearing in subsection 337(b)(1)(A), drawn from subsection 1221(1), with the latter subsection's similar, albeit broader, purpose of isolating one type of "profits and losses arising from the everyday operations of a business".[11]

Corn Products Co. v. Commissioner, 350 U.S. 46, 52, 76 S.Ct. 20, 24, 100 L.Ed. 29 (1955). *See* Malat v. Riddell, 383 U.S. 569, 572, 86 S.Ct. 1030, 16 L.Ed.2d 102 (1966). This approach appears to explain Congress's failure to further include in subsection (b)(1)(A) the types of property described in subsections 1221(2) through (5), such as property used in the trade or business and accounts receivable, which are not normally *sold* in the ordinary course of a corporation's business. It further appears to explain Congress's decision to afford nonrecognition to bulk sales of inventory and property held primarily for sale to customers under subsection 337(b)(2), in that such property is not normally sold in bulk to a single purchaser in the ordinary course of a corporation's business.

Congress's intent to avert the nonrecognition of gain or loss from sales in the ordinary course of the business during the 12-month period is, of course, unique to Section 337 and alien to the statute's broader purpose of establishing a parity between Sections 336 and 337. By denying nonrecognition to sales of inventory and property held primarily for sale to customers, but then affording nonrecognition to bulk sales of those same assets, subsection 337(b) leads to some disparity of tax consequences under Sections 336 and 337.[12] This disparity, however,

the distribution of assets in kind, notwithstanding the above provision. Such recognition, however, is generally governed by the overriding assignment of income doctrine rather than by the capital or noncapital nature of the property distributed. While that doctrine is most frequently applied where ordinary-income-producing assets are distributed, it is not so restricted. *See* Wood Harmon Corp. v. United States, 311 F.2d 918, 921–926 (2d Cir. 1963).

11. Rather than borrowing the language of subsection 1221(1), the unsuccessful House version of what later became Section 337 expressly provided that its nonrecognition provisions did not apply to "a sale in the ordinary course of business". H.Rep.No.1337, 83d Cong., 2d Sess.; [1954] 3 U.S.Code Cong. & Adm.News at 4244. *See also* Frank W. Verito, 43 T.C. 429, 438 (1965). The Senate Report on the present version of

Section 337 simply notes the following with respect to the unsuccessful House version:
"While the purpose intended to be served by section 337 is similar to that provided in section 333 of the House bill, the language and approach of section 337 differs from that of section 333." S.Rep.No.1622, 83d Cong., 2d Sess.; [1954] 3 U.S.Code Cong. & Adm.News at 4896.
*See also* Hollywood Baseball Ass'n v. Commissioner, 423 F.2d 494, 500 (9th Cir.), cert. denied, 400 U.S. 848, 91 S.Ct. 35, 27 L.Ed.2d 85 (1970).

12. It seems open to question whether the assignment of income doctrine as applied under Section 336, would require a corporation to recognize gain when inventory or property held primarily for sale is sold by its shareholders after a distribution in kind. *Cf.* United States v. Lynch, 192 F.2d 718 (9 Cir. 1951), cert. denied, 343 U.S. 934, 72 S.Ct. 770, 96 L.Ed. 1342 (1952). If, however, such recognition would otherwise be

**118**

is minimized if, under the above reasoning, the term "property" in Section 337 is restricted only to the extent of the express exclusions set forth in subsection (b).

■ In accordance with the Regulations (Treas.Reg. 1.337–3(a)) discussed above and the language of the statute itself, we conclude that the term property should be read to include all assets owned by the corporation except those expressly excluded under subsection (b). While recognizing that no hard and fast rule is likely to fit every case arising under Section 337, we further conclude that a corporation's recognition or nonrecognition of gain or loss [13] arising from the sale of property not expressly excluded under subsection 337(b), should generally be governed by the established doctrines of tax law applicable to distributions in kind under Section 336—specifically, for purposes of the present case, the assignment of income doctrine. *See* Williamson v. United States, 292 F.2d 524, 527–530, 155 Ct.Cl. 279 (1961) (invoking the assignment of income doctrine to require a cash-basis corporation to recognize gain on the distribution of accounts receivable under Section 336); Wood Harmon Corp. v. United States, 311 F.2d 918, 921–923 (2d Cir. 1963) (invoking the assignment of income doctrine to require a

corporation to recognize capital gains on the distribution under Section 336 of the right to receive condemnation proceeds). *See also* Commissioner v. Kuckenberg, 309 F.2d 202, 204–206 (9th Cir. 1962), cert. denied, 373 U.S. 909, 83 S.Ct. 1296, 10 L.Ed.2d 411 (1963) (invoking the assignment of income doctrine to require a cash-basis corporation to recognize gain from a Section 337 sale of completed contracts); Family Record Plan, Inc. v. Commissioner, 309 F.2d 208 (9th Cir. 1962), cert. denied, 373 U.S. 910, 83 S. Ct. 1297, 10 L.Ed.2d 411 (1963) (same result where completed customer contracts, or accounts receivable, were sold by a cash-basis corporation under Section 337).[14]

■ Under the assignment of income doctrine, as discussed and applied in Commissioner v. Kuckenberg, *supra*, we conclude that the $1,344,191, realized by Surface upon the sale of its uncompleted, long-term contracts and representing the portion of the total estimated profits deemed to have been earned through its partial performance of those contracts, must be recognized to Surface, just as it would have been had the contracts been distributed in kind under Section 336 and thereafter sold by Surface's shareholders. While *Kuckenberg* dealt with completed, rather than uncompleted, contracts under Section 337,[15]

required, it seemingly could not be avoided by the shareholders' bulk sale of that property to a single purchaser.

13. The nonrecognition of losses under Section 337 presents a special problem for any efforts to achieve a parity between Sections 336 and 337. *See* B. Bittker & J. Eustice, *supra*, para. 11.65, at 11–69 n. 124. It is interesting to note that the House version of what became Section 337 provided only for the nonrecognition of gains. See H.Rep.No. 1337, 83d Cong., 2d Sess.; [1954] 3 U.S. Code Cong. & Adm.News at 4244. *See also* Frank W. Verito, 43 T.C. 429, 438 (1965). For purposes of the present case, it is sufficient to note that the approach which we adopt creates no greater disparity in the context of sales at a loss than do the approaches based on the Section 337–1221 analogy.

14. The decisions in *Kuckenberg*, *Family Record Plan, Inc.*, and *Williamson*, cited in

the text, rested upon the Commissioner's authority under 26 U.S.C. § 446(b) to impose upon a taxpayer a method of accounting which clearly reflects income, in addition to the assignment of income doctrine. *See also* Jud Plumbing & Heating, Inc. v. Commissioner, 153 F.2d 681 (5th Cir. 1946) (allocating to a liquidated corporation its pro-rata portion of profits under uncompleted contracts, notwithstanding the corporation's completed-contract method of accounting).

While in its answer to the present suit the Government asserted that Surface's profits at issue here were "based upon the percentage of completion of work in process", it has at no time expressly invoked the Commissioner's authority under Section 446(b). We find, however, no authority suggesting that the invocation of Section 446(b) is a prerequisite to judicial application of the assignment of income doctrine.

15. In addition to the three completed contracts which were sold by the corporation

this factor does not detract from the principle recited in *Kuckenberg*, 309 F. 2d at 205:

> " '[T]he corporation has performed the services which create the right to the income which brings into play the basic rule that income shall be taxed to him who earns it. Helvering v. Eubank, 1940, 311 U.S. 122, 61 S.Ct. 149, 85 L.Ed. 81.' "

We hold that Surface's uncompleted, long-term contracts, not falling within any of the express exclusions of subsection (b)(1), were "property" under Section 337. Under the assignment of income doctrine, however, we further hold that the $1,344,191 in profits realized on that sale must be recognized to Surface, notwithstanding the nonrecognition provisions of Section 337.

For the reasons stated above, a judgment will be entered affirming the judgment of the District Court, with costs awarded against Appellant pursuant to 28 U.S.C. § 2412 (1966).

pursuant to a Section 337 plan of liquidation, the *Kuckenberg* case also involved one uncompleted contract which was distributed to the shareholders and completed by them. Again relying upon the Comissioner's authority under Section 446(b) and, presumably, the assignment of income doctrine, the Court of Appeals upheld the Commissioner's imposition of a corporate tax under the percentage of completion method of accounting. See 309 F.2d at 207.