COMMISSIONER OF INTERNAL REV-
ENUE, Petitioner,

v.

Henry A. KUCKENBERG, Transferee,
Harriet Kuckenberg, Transferee, Law-
rence W. Kuckenberg, Transferee, Re-
spondents.

Henry A. KUCKENBERG, Transferee,
Harriet Kuckenberg, Transferee, Law-
rence W. Kuckenberg, Transferee, Peti-
tioners,

v.

COMMISSIONER OF INTERNAL REV-
ENUE, Respondent.

No. 17538.

United States Court of Appeals
Ninth Circuit.

Oct. 11, 1962.

Rehearing Denied Nov. 16, 1962.

Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, David O. Walter, Norman H. Wolfe, Attys., Dept. of Justice, Tax Div., Washington, D. C., Crane C. Hauser, Chief Counsel, Internal Revenue Service, Washington, D. C., for petitioner Commissioner of Internal Revenue.

Mautz, Souther, Spaulding, Kinsey & Williamson, William H. Kinsey, James A. Larpenteur, Jr., and James R. Moore, Portland, Or., for respondents Kuckenberg et al.

Before HAMLEY, MERRILL and DUNIWAY, Circuit Judges.

MERRILL, Circuit Judge.

Kuckenberg Construction Company, an Oregon corporation, pursuant to a plan of complete liquidation sold and assigned three construction contracts, the income from which had been fully earned, to an independent purchaser for $327,000.00. The company was on the cash method of accounting. The question presented by this review is whether, under § 337(a) of the Internal Revenue Code of 1954, 26 U.S.C.A. § 337(a),[1] nonrecognition at-tached to the proceeds of this sale. The tax court held for the taxpayers and the commissioner has petitioned this court for review. We here hold that the proceeds are taxable.

Respondents are the transferees of the assets of Kuckenberg Construction Company. A second question is presented by their contention that they may not, as transferees, be held liable for tax payable by the transferor corporation. We here hold that they are liable.

Upon dissolution of the corporation, the transferees continued the construction business in partnership form. Among the corporate assets was an uncompleted contract known as the "Booth Ranch Contract," which was transferred to respondents for completion. In his notices of transferee liability, the commissioner determined that in order to clearly reflect the corporate income the profits from the Booth Ranch Contract should be allocated between the corporation and the partnership in accordance with the percentage of completion method of computation. The tax court upheld the commissioner in this determination and the transferees have petitioned this court for review. Upon this question we here affirm the ruling of the tax court.

The record discloses the following facts:

From its incorporation under the laws of Oregon on December 6, 1949, until January 14, 1955, the Kuckenberg Construction Company was engaged in the heavy construction business, consisting primarily of road building and related work. During the periods here involved, the corporation maintained its principal office and place of business in Portland, Oregon. Respondents were the officers and directors of the corporation, and at all pertinent times the outstanding capital stock of the corporation con-

---

1. "General Rule.—If—

"(1) a corporation adopts a plan of complete liquidation on or after June 22, 1954, and

"(2) within the 12-month period beginning on the date of the adoption of such plan, all of the assets of the corporation are distributed in complete liquidation, less assets retained to meet claims, then no gain or loss shall be recognized to such corporation from the sale or exchange by it of property within such 12-month period."

sisted of shares of common stock all of which were owned by respondents.

The corporation employed the cash basis method of accounting and its federal tax returns were filed on this basis.

On December 17, 1954, the board of directors of the corporation adopted and the stockholders approved a plan of complete liquidation of the corporation. The corporation then executed and duly filed with the Corporation Commissioner of Oregon a statement of intent to dissolve pursuant to the provisions of Oregon law.

On December 27, 1954, pursuant to the plan of complete liquidation, the corporation sold and assigned three construction contracts to one Simpson for $327,-000.00, payable in installments.

Simpson was not in the construction business, but was a real estate agent and operator. The construction company had completed the work which it was required to perform in connection with these contracts, but settlement had not been made at the time its board of directors decided to dissolve the corporation. In the sale and transfer of the contracts the corporation warranted that the purchaser would receive substantial specified sums in excess of any expenditures which he might have to make under the contract. The corporation also indemnified the purchaser from any liability resulting from the contract and the activities of the corporation thereunder prior to the sale and transfer. In the agreements of assignment with respect to the contract, the corporation guaranteed that each contract "has been or will be fully performed in accordance with its terms." By agreement respondent Henry A. Kuckenberg warranted that the purchaser Simpson, would receive at least $327,-000.00 from the three contracts in excess of any expenditures by the purchaser under those contracts, and agreed that upon demand Mr. Kuckenberg would pay any deficit existing on October 1, 1955.

On January 25, 1955, the liquidation of the corporation was accomplished. Liquidating distributions were made to respondents and left the corporation without any assets after December 7, 1955. On that date the corporation filed articles of dissolution with the Oregon corporation commissioner pursuant to Oregon law and on the same date the corporation commissioner issued his certificate of dissolution.

On April 25, 1958, notices of deficiency in the income taxes of Kuckenberg Construction Company for the taxable years 1954 and January 1, 1955, to December 7, 1955, were issued to respondents as transferees of the assets of the corporation. The notices of deficiency and attached exhibits stated that the corporation had been dissolved and liquidated and that its assets had been transferred to respondents during 1955 and that no notice of deficiency was issued to the corporation.

■ Respondents' position, which was accepted by the tax court, is that the sums realized from the assignment of the contracts constituted "gain from a sale of property" under § 337(a) and consequently are not to be recognized for tax purposes.

The commissioner, on the other hand, asserts that had the corporation been on the accrual method of accounting the income from these contracts would have become taxable when earned; that it is only the fact that the corporation was on the cash basis which has made it possible for this earned income to be transformed into what appears to be a gain from sale; that the cash method of accounting under these circumstances does not clearly reflect income and that the commissioner was therefore within his authority under § 446(b) of the Internal Revenue Code, 26 U.S.C.A. § 446(b)[2] in

2. "Exceptions.—If no method of accounting has been regularly used by the taxpayer, or if the method used does not clearly reflect income, the computation of taxable income shall be made under such method as, in the opinion of the Secretary or his delegate, does clearly reflect income."

requiring a computation by a method which would clearly reflect income.[3]

We agree with the commissioner.

In Floyd v. Scofield, 5 Cir.1952, 193 F.2d 594, the court dealt with a liquidation of a cash basis corporation in which accounts receivable were distributed to the shareholders. In holding the corporation taxable the court stated (at pages 595–596 of 193 F.2d):

"The question here, as in Helvering v. Horst, 311 U.S. 112, 61 S.Ct. 144, 146, 85 L.Ed. 75, is whether one who is presently entitled to receive income, and who is taxable only on receipt of payment, can escape taxation by giving away his right thereto in advance of actual payment. * * *

"To hold that the corporation is not liable in these circumstances would enable it to escape taxation by the simple device of dissolving prior to the actual collection by it of monies fully earned by and payable to the corporation *before* liquidation. * * *

"The method of accounting employed by the corporation with respect to this transaction does not clearly reflect the corporate income. The Commissioner was well within his authority under Sec. 311, Int. Rev.Code, 26 U.S.C.A. § 311, in reappraising the situation and requiring a computation by a method which clearly and accurately reflects the income in question."

In United States v. Lynch, 9 Cir. 1951, 192 F.2d 718, 721, this court stated:

"We understand appellant to contend that the income in question is not that of the corporation. The answer is, that the corporation has performed the services which create the right to the income which brings into play the basic rule that income shall be taxed to him who earns it. Helvering v. Eubank, 1940, 311 U.S. 122, 61 S.Ct. 149, 85 L.Ed. 81. A corporate liquidation and transfer of assets cannot divert taxability of income already earned any more than does an assignment of such income."

In Williamson v. United States, Ct.Cl. 1961, 292 F.2d 524, where the court, under similar circumstances, followed Floyd v. Scofield, supra, it was stated at page 530 of 292 F.2d:

"In any case the outcome hinges upon whether there had been a realization of income by the distributing corporation. It is fundamental that all economic gain is not taxable income and that it is the realization of income that is the taxable event. But the law contemplates that there is some point at which all income which has accrued, in the sense of having been fully earned, will be realized and taxable to him who earned it regardless of the accounting method involved. An acceptable accounting method should simply indicate this point logically and consistently." [4]

Respondents protest that these were cases of distribution of assets to shareholders under §§ 311 or 336; that the case at bar is one of a sale by a liquidating corporation clearly falling within § 337(a); that to sanction the commissioner's authority to change the method of accounting under these circumstances is to deprive respondents of a right clearly and expressly bestowed by § 337(a).

■ We cannot agree. The purpose of § 337(a) was to eliminate the formal problem created by Commissioner of Internal Revenue v. Court Holding Co.,

---

3. The deficiency notice to these taxpayers states:

"It is determined, because of the liquidation of Kuckenberg Construction Co., that there should be taxed to the corporation, in its last taxable periods, earnings of $359,446.42 on three certain construction contracts under the provisions of section 446(b) of the Internal Revenue Code of 1954."

4. These principles have also been recognized by this court in Idaho First National Bank v. United States, 9 Cir., 1959, 265 F.2d 6.

1945, 324 U.S. 331, 65 S.Ct. 707, 89 L.Ed. 981, and United States v. Cumberland Public Service Co., 1950, 338 U.S. 451, 70 S.Ct. 280, 94 L.Ed. 251, by achieving uniformity of tax treatment for the sale of assets by a liquidating corporation and the sale of assets by shareholders to whom the assets had been distributed in liquidation.[5] Section 337 was thus intended to erase a formalistic inequity and not to create one. We find no suggestion or intimation that it was ever contemplated that a cash basis taxpayer was to receive unequal and advantageous treatment over an accrual basis taxpayer through his ability to avoid the consequences of an anticipatory assignment of earned income.

We conclude that the commissioner was within his authority in computing income by the method selected; that the proceeds of the assignment of these construction contracts constituted recognized income to the liquidating corporation.

Respondents contend, for three reasons, that even accepting corporate liability for the tax in question, they may not be held liable as transferees of the corporation's assets under § 6201 of the Internal Revenue Code, 26 U.S.C.A. § 6201.

■ First they assert that the United States does not have the status of a creditor since no ninety-day letter was sent to the corporation. However, the government need not take futile assessment action against a taxpayer without assets. Ginsberg v. Commissioner of Internal Revenue, 2 Cir. 1962, 305 F.2d 664; Flynn v. Commissioner of Internal Revenue, 5 Cir. 1935, 77 F.2d 180.

With respect to the procedural requirement of notice of deficiency, H. Conference Rep. No. 356 (1939–1 Cum.Bull., Part 2, 361, 372) states the intention of Congress very explicitly as follows:

"Section 274(a) [predecessor of Sections 6212 and 6213 of the 1954 Code] requires notice of a deficiency in a tax to be sent the taxpayer before further proceedings for collection of the tax liability are continued. The section, however, in terms applies only to a deficiency in a tax and does not apply to the liability of a transferee in respect of the tax of the taxpayer. Therefore, in proceedings against the transferee, notice need not be given the taxpayer under section 274(a). However, under the substitute agreed to by the conferees, the liability of the transferee is collected in the same manner as the liability for tax. Section 274 (a) is thus incorporated by reference, but the result of such reference is that for procedural purposes the transferee is treated as a taxpayer would be treated, and under section 274(a) notice would be sent to the transferee (and not the taxpayer) in proceedings to enforce the liability of the transferee."

Next, respondents assert that the United States, by failing to comply with the provisions of Oregon law, has failed to perfect its right to proceed against trans-

5. The Senate report relating to § 337 states:
   "Section 337 * * * concerns the problems raised by the decisions in Commissioner v. Court Holding Company * * * and U. S. v. Cumberland Public Service Co. * * * and the numerous related cases. These decisions involve the question of whether the corporation or the shareholder effected a sale of property in connection with the liquidation of the corporation. Under the decision in Cumberland Public Service Co., supra, it is indicated that in the case of a distribution of property in liquidation of a corporation followed by its sale made in fact by its shareholders, a single tax is imposed at the shareholder level. Where the shareholders in fact did not effect the sale, tax is imposed both at the corporate and at the shareholder level. Accordingly, under present law the tax consequences arising from sales made in the course of liquidations may depend primarily upon the formal manner in which the transactions are arranged. Your committee intends in section 337 to provide a definitive rule which will eliminate the present uncertainties." S.Rep. No. 1622, 83d Cong., 2d Sess., p. 258; U.S.Code Congressional and Administrative News 1954, pp. 4621, 4896.

ferees. Specifically, it is asserted that Oregon requires the creditor to proceed to judgment and a return of execution nulla bona.

■■ It is necessary, under Commissioner v. Stern, 1958, 357 U.S. 39, 78 S. Ct. 1047, 2 L.Ed.2d 1126, to look to state law in order to determine the transferee's substantive liability. However, the court in Stern assumed as a matter of course that the transferee provisions of the Internal Revenue Code governed the procedure the commissioner had to follow in asserting and enforcing that liability. The United States, in seeking to collect federal taxes, was not expected by Congress to follow the procedural intricacies of every one of the fifty states.[6] Oregon law here provides, when proper steps are taken, that these transferees shall be liable. That suffices.

■ Third, respondents contend that to assert transferee liability the government must reach the trust fund; that the transferees put the money in a partnership which, under Oregon law, is a separate entity. Therefore, the government should have proceeded against the partnership rather than the partners.

We feel there is no merit to this contention. Respondents were the recipients and, as partners, are still in ownership and control.

We conclude that respondents, as transferees, are liable for the unpaid tax of the corporation.

Respondents have petitioned for review of the tax court's decision upholding the commissioner in his determination that tax was due from the corporation on the "Booth Ranch contract." This contract,

uncompleted by the corporation, was assigned to taxpayers and profitably completed by them. At the time of assignment the corporation had incurred a substantial portion of the total expense of the contract and had performed substantial work on it. On its cash basis the corporation had reported a loss.

■ The commissioner determined that the cash method did not clearly reflect income and, under § 446(b), applied the percentage of completion method, by which he determined income to the corporation in 1955 from the Booth Ranch contract of $6,566.63. He was upheld by the tax court.

Respondents concede that the commissioner has authority under § 446(b) in proper cases to change a taxpayer's accounting methods from completed contract to percentage of completion. Jud Plumbing & Heating v. Commissioner, 5 Cir. 1946, 153 F.2d 681; Standard Paving Co. v. Commissioner, 10 Cir. 1951, 190 F.2d 330. They contend, however, that such a change cannot be based solely on hindsight but must be based on the known facts at the date of distribution. Here, they assert, at the time of distribution, there was no way of knowing whether the contract would prove profitable. They point to an earlier tax court decision holding that for purposes of determining capital gain on distribution of this contract, the contract had no fair market value. 19 T.C.M. 1546 (1960).

In that decision the court had stated:

"Petitioner, Henry A. Kuckenberg, who was the president of the corporation and the directing head of its business operations, testified at the hearing and gave as his opin-

---

**6.** See Ginsberg v. Commissioner of Internal Revenue, 2 Cir., 1962, 305 F.2d 664.

The legislative history of the transferee liability provisions of the Code shows that they were designed to facilitate proceedings against transferees in the same manner as against a taxpayer and to eliminate the need for previous cumbersome procedures. The pertinent legislative history concerns § 280, Revenue Act of 1926, c. 27, 44 Stat. 9, from which § 311 of the 1939 Code (discussed in

Commissioner v. Stern, supra) and § 6901 of the 1954 Code, here in issue, were derived. Provisions with respect to the limitation of the period for assessment against a transferee were added initially in § 311(b) of the Revenue Act of 1928, c. 852, 45 Stat. 791. No pertinent changes from prior law were made in § 6901 of the 1954 Code. H.Rep. No. 1337, 83d Cong., 2d Sess., pp. A422–A423; S.Rep. No. 1622, 83d Cong., 2d Sess., p. 599.

**208**

ion that the contract had no fair market value at the time it was assigned. The gist of his testimony was that at the time the contract was assigned no one knew or could know whether or not the contract would be profitable. He testified that the company expected to make a profit when it took a contract such as this one but that this expectation did not always turn out to be true, that sometimes in the experience of the corporation it had completed a contract at a loss."

Such uncertainty is not unusual. While fairly bearing on the question of capital gain we feel it is no basis for denying authority to the commissioner to change the corporation to a percentage of completion method where the cash method did not clearly reflect income.

Upon the petition of the commissioner, the tax court is reversed.

Upon the petition of respondents, the tax court is affirmed.