Robert H. STORZ, transferee of Storz-
Wachob-Bender Co., a dissolved
corporation, Appellee,

v.

COMMISSIONER OF INTERNAL
REVENUE, Appellant.

No. 77–1722.

United States Court of Appeals,
Eighth Circuit.

Submitted April 11, 1978.

Decided July 18, 1978.

Rehearing and Rehearing En Banc
Denied Aug. 10, 1978.

Gary R. Allen, Atty., Tax Div., Dept. of Justice, Washington, D. C., for appellant; Carr Ferguson, Asst. Atty. Gen., Gilbert E. Andrews and R. Bruce Johnson, Attys., Tax Div., Washington, D. C., on the brief.

Kent O. Littlejohn of Baird, Holm, McEachen, Pedersen, Hamann & Haggart, Omaha, Neb., for appellee; Ronald C. Jensen, Omaha, Neb., on the brief.

Before GIBSON, Chief Judge, HEANEY, Circuit Judge, and MacLAUGHLIN, District Judge.*

MacLAUGHLIN, District Judge.

The Commissioner appeals from a decision of the Tax Court holding that certain uncompleted underwriting contracts assigned in the complete liquidation of appellee's business were property within the meaning of Section 337 of the Internal Revenue Code (26 U.S.C. § 337), but that the assignment of income doctrine, which would make the appellee responsible for payment of income tax on a part of the purchase price, was not applicable under the facts of this case. While we agree that the contracts were property under Section 337, we hold that the assignment of income doctrine is applicable and thus reverse and remand to the Tax Court for its further consideration consistent with this opinion.

Storz-Wachob-Bender Co. (S–W–B), owned by appellee, Robert H. Storz, was engaged in the business of investment banking, principally underwriting various types of municipal and corporate securities. S–W–B used the accrual method of accounting and, in accordance with industry practice, recognized income only upon successfully completing underwriting. Because of legal and marketing contingencies involved in the completion and scope of an underwriting program, the income is usually not recognized by the investment banker until all contingencies are satisfied and the equity and debt securities are actually sold. This is true even though relatively minor and insignificant contingencies remain to be fulfilled.

On March 8, 1966 S–W–B adopted a plan of complete liquidation in accordance with Section 337. The next day it entered into an agreement with First Nebraska Securities, Inc. (First Nebraska) for sale of all its assets and business as a going concern. The purchase price equaled the net book value of S–W–B's assets, less liabilities, plus an unallocated payment from First Nebraska to S–W–B in the amount of $230,000. The agreement further provided that if at least six of the ten registered representatives employed by S–W–B left their employment, the purchase price payable to S–W–B by First Nebraska would be reduced by $16,667 for each registered representative in excess of four who did not continue.

On March 9, 1966, the date of the purchase agreement, S–W–B had partially performed at least 25 underwriting contracts for equity securities, private placement of debt securities, and municipal sanitary and improvement district bond issues. S–W–B had no contractual right to payment under any of the arrangements until the securities were sold even though much of the services in connection with them had been performed. The contracts, which did not ap-

---

* The Honorable Harry H. MacLaughlin, United States District Judge, District of Minnesota, sitting by designation.

pear on the company's balance sheet, were in various stages of completion on the date of the agreement. However, as of that date, a substantial amount of work had been done on major contracts with Great Plains Natural Gas Co. and Data Documents, Inc. Many of the other contracts were also substantially completed by that time. When the purchase agreement was signed on March 9, 1966, representatives of First Nebraska were aware of the underwriting agreements in process and their approximate stages of completion. On that date, First Nebraska considered that at least part of the unallocated $230,000 included in the purchase price would be recoverable from income to be received upon completion of the partially performed contracts.

Shortly after the closing of the agreement several of the underwriting contracts in process were actually completed and the income received by First Nebraska. For example, $50,400 was received on April 21, 1966, from Data Documents, Inc. and $64,400 on May 5, 1966, from the Great Plains arrangement. In July, 1966, officers of First Nebraska unilaterally allocated $129,851.50 of the purchase price to income which they considered had already been earned by S–W–B on the contracts in progress as of the date of the sale agreement. After the allocation was approved by First Nebraska's accounting firm and board of directors, that amount of purchased income was excluded from the company's taxable income for the year.[1]

S–W–B did not report any part of the purchase price as taxable ordinary income on its return for the period April 1, 1966, to February 20, 1967. It then dissolved. The Commissioner found that S–W–B had realized taxable ordinary income in the amount of $129,851.50 in connection with the sale to First Nebraska and determined a corresponding tax deficiency.

Appellee contested the Commissioner's determination in the Tax Court.[2] The court held that S–W–B had not actually earned any income on the contracts in process as of the date of the sale to First Nebraska and that therefore no taxable assignment of income by S–W–B had occurred to override the nonrecognition provisions of Section 337.[3] Robert H. Storz, 68 T.C. 84, P–H Tax Ct. ¶ 68.9 (1977). The court assumed arguendo that a portion of the purchase price was allocable to the contracts in process,[4]

1. The allocation was based on computations of gross income actually received or to be received by First Nebraska reduced by applicable percentage-of-completion factors and expenses incurred or foreseen in completing the contracts subsequent to acquisition.

The Commissioner determined a deficiency against First Nebraska on the ground that the price paid did not purchase income already earned by S–W–B and thus could not be excluded. First Nebraska challenged the determination in the United States District Court for the District of Nebraska in a refund suit, which the parties have settled.

2. Appellee and his wife also contested a determination of the Commissioner that they were not entitled to a deduction for a demolition loss. (Tax Court Docket No. 8292–71) The Tax Court found the deduction applicable and the Commissioner does not appeal from that decision.

3. Section 337(a) provides that if "within the 12-month period beginning on the date of the adoption of [a] plan [of complete liquidation], all of the assets of the corporation are distributed in complete liquidation, less assets retained to meet claims, then no gain or loss shall be recognized to such corporation from the sale or exchange by it of property within such 12-month period." I.R.C. § 337(a), as amended, 26 U.S.C.A. § 337(a) (Supp.1977).

Section 337 was enacted to provide corporations liquidating in compliance with its terms safe passage through the strait demarcated by Comm'r v. Court Holding, Inc., 324 U.S. 331, 65 S.Ct. 707, 89 L.Ed. 981 (1945), and United States v. Cumberland Public Service Co., 338 U.S. 451, 70 S.Ct. 280, 94 L.Ed. 251 (1950). The section eliminates the corporate tax on the proceeds of a complete liquidation of corporate assets. The shareholders who receive the proceeds of such sale by the corporation thus achieve tax parity with shareholders who receive corporate assets in a distribution and then sell the assets themselves. Compare I.R.C. § 336. See generally, Central Tablet Mfg. Co. v. United States, 417 U.S. 673, 94 S.Ct. 2516, 41 L.Ed.2d 398 (1974); Teget v. United States, 552 F.2d 236, 241 (8th Cir. 1977).

4. The Tax Court stated "There can be little doubt that the prospective income from S–W–B's contracts in process was an important con-

but found controlling the fact that S–W–B had not as of the sale date derived a fixed and determined right to income under the contracts. P–H Tax Ct. ¶ 68.9, at 68–49, –50.

Following the lead of *Midland-Ross Corp. v. United States,* 485 F.2d 110 (6th Cir. 1973) we hold that the Tax Court correctly concluded that the partially completed contracts in question were "property" in the context of section 337.[5] Therefore, the question to be resolved on this appeal is whether the assignment of income doctrine applies so that appellee is responsible for the payment of income tax on some part of the consideration received from First Nebraska. If applicable, the doctrine reaches, as appellee concedes, gain that section 337 would otherwise cause to go unrecognized. *Midland-Ross Corp. v. United States,* 485 F.2d 110 (6th Cir. 1973); *Comm'r v. Kuckenberg,* 309 F.2d 202 (9th Cir. 1962), *cert. denied,* 373 U.S. 909, 83 S.Ct. 1296, 10 L.Ed.2d 411 (1963).

The assignment of income doctrine has evolved from several landmark Supreme Court decisions. It is based on the assumption that the "dominant purpose of the revenue laws is the taxation of income to those who earn or otherwise create the right to receive it and enjoy the benefit of it when paid." *Helvering v. Horst,* 311 U.S. 112, 119, 61 S.Ct. 144, 148, 85 L.Ed. 75 (1940). One who earns income, and thus the right to dispose of it per his wishes, is taxed on that income even though he assigns it to another before or after it is earned. *Lucas v. Earl,* 281 U.S. 111, 50 S.Ct. 241, 74 L.Ed. 731 (1930) (attorney contracted with his wife that all property acquired during their marriage would be taken in joint tenancy; despite validity of contract, attorney's salary in whole taxable to him); *Helvering v. Horst,* 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75 (1940) (father made gift to son of interest coupons which matured after the transfer, income taxable to the father). The doctrine applies even if the right to income is contingent on the actions of third parties. In *Helvering v. Eubank,* 311 U.S. 122, 61 S.Ct. 149, 85 L.Ed. 81 (1940), a companion case to *Helvering v. Horst, supra,* a life insurance agent whose agency had terminated was entitled to receive renewal commissions on certain policies he had written. Although he assigned the right to receive the commissions to another, they were held to be taxable to him in the year when they were paid.

In the instant case, S–W–B assigned to First Nebraska its right to receive income under the partially completed underwriting contracts. Payment of those underwriting fees was contingent on successful completion of the underwriting by First Nebraska personnel. Nevertheless, a portion of the purchase price paid by First Nebraska for S–W–B assets was clearly intended to compensate S–W–B for its efforts on the partially completed contracts. Although those efforts did not absolutely entitle S–W–B to compensation from its customers at the time of the sale, they clearly had definite value to both S–W–B and First Nebraska. In other words, at the time of the sale S–W–B had earned through its efforts at least a portion of the consideration which it received from First Nebraska, even though those earnings had not actually accrued to S–W–B in the form of a fixed contractual right to payment of a specific fee. S–W–B cannot avoid taxation by assigning the fruit of its efforts to another, when the fruit, however green, has a market value at the time of the assignment. The assignment of income doctrine causes income to be taxed to him who earns it.

---

sideration of First Nebraska in arriving at the purchase price for S–W–B's business." *Robert H. Storz,* P–H Tax Ct. ¶ 68.9, at 68–50 (1977).

**5.** In *Midland-Ross* the court held that the specific exclusions of Section 337(b) exhaustively list the assets which are not "property" in the context of Section 337. Since the contracts at issue in this case do not fall within those exceptions, they must be considered property. The Internal Revenue Service has itself adopted this reasoning, stating in Rev. Ruling 77–190, 1977–1 Cum.Bull. 88, 89, that "the term property as used in section 337 of the Code includes all assets of a corporation except the specific statutory exceptions in section 337(b) . . . ."

■ The Tax Court held that income is earned only when the assignor has a fixed and determined right to the income. This position appears to equate the concepts of earn and accrue, which are relevant to different issues of taxability. Income is taxed to whoever earns it. Thus, the concept of earn is relevant to determining the identity of the proper taxpayer.[6] The concept of accrue, however, is relevant to the issue when income becomes taxable. Income is taxable only when it has been realized under an acceptable accounting method. The accrual method of accounting generally provides that realization occurs when the taxpayer has a fixed right to a reasonably ascertainable sum. Treas.Reg. § 1.446–1(c)(ii). It is entirely possible that income may have been earned, but not yet realized because not yet accrued. See, *Helvering v. Eubank*, 311 U.S. 122, 61 S.Ct. 149, 85 L.Ed. 81 (1940).

■ The assignment by S–W–B to First Nebraska was an assignment of earned income by sale. In an assignment by sale, income is realized as of the date of the assignment. See, *Comm'r v. P. G. Lake, Inc.*, 356 U.S. 260, 78 S.Ct. 691, 2 L.Ed.2d 743 (1958); *United States v. Eidson*, 310 F.2d 111 (5th Cir. 1962). The fact that the income had not accrued to S–W–B under the partially completed underwriting contracts as of the date of sale is not controlling; the income in question was realized by S–W–B when First Nebraska paid it for the right to receive the underwriting fees when they accrued. The amount of consideration paid by First Nebraska reflected the contingencies of receiving payment from S–W–B's clients, but there was no contingency in the receipt of consideration by S–W–B. That is, First Nebraska made payment to compensate S–W–B for moneys earned by S–W–B for its efforts on the contracts even though not yet absolutely accrued to S–W–B at the time of the sale.

In *Midland-Ross Corp. v. United States*, 485 F.2d 110 (6th Cir. 1973), the Sixth Circuit held the assignment of income doctrine applicable to partially completed contracts assigned in a liquidation. There, the liquidating company sold partially performed long-term contracts for the design, manufacture, and installation of heat treat equipment. If the contracts were not satisfactorily completed, no moneys, other than certain progress payments, would be due on them to the liquidating company. The parties to the sale agreed that $6.7 million was the fair market value of the uncompleted contracts, based on the assignor's costs of $5.4 million and estimated profits of $1.3 million earned through partial performance. The court held:

> Under the assignment of income doctrine, as discussed and applied in *Commissioner v. Kuckenberg*, [309 F.2d 202 (9th Cir. 1962), cert. denied, 373 U.S. 909, 83 S.Ct. 1296, 10 L.Ed.2d 411 (1963)] we conclude that the $1,344,191, realized by Surface [the assignor] upon the sale of its uncompleted, long-term contracts and representing the portion of the total estimated profits deemed to have been earned through its partial performance of those contracts, must be recognized to Surface, just as it would have been had the contracts been distributed in kind under Section 336 and thereafter sold by Surface's shareholders. While *Kuckenberg* dealt with completed, rather than uncompleted, contracts under Section 337, this factor does not detract from the principle recited in *Kuckenberg*, 309 F.2d at 205:
>
>> [T]he corporation has performed the services which create the right to the income which brings into play the basic rule that income shall be taxed to him who earns it. *Helvering v. Eubank*, 1940, 311 U.S. 122, 61 S.Ct. 149, 85 L.Ed. 81.

485 F.2d at 118–19.

■ The Tax Court in the instant case attempted to distinguish *Midland-Ross* on two grounds: first, because the assignor in that case had received progress payments in

---

6. The concept of earn is relevant as well to the issue whether gain is to be taxed as ordinary or capital income. See *Comm'r v. P. G. Lake, Inc.*, 356 U.S. 260, 78 S.Ct. 691, 2 L.Ed.2d 743 (1958); *Pridemark, Inc. v. Comm'r*, 345 F.2d 35 (4th Cir. 1965), overruled in different part, *Of Course, Inc. v. Comm'r*, 499 F.2d 754 (4th Cir. 1974).

partially performing the uncompleted contracts, and, second, because the parties mutually agreed to the fair market value of the assigned contracts. *Robert H. Storz,* P–H Tax Ct. ¶ 68.9, at 68–51 to –52 (1977). Neither difference is a distinction. The estimated profit, not the progress payments, was the income held to be taxable to the assignor under the assignment of income doctrine.[7] Moreover, the failure of two parties to a contract, such as in the instant case, to specifically agree as to what part of the purchase price is for income earned on uncompleted contracts, will not allow the assignor to avoid paying taxes on the earned income which is being assigned.

Based upon the opinions in *Eubank* and *Midland-Ross,* we hold that the assignment by S–W–B of its right to receive income under the underwriting contracts was an anticipatory assignment of income.[8] The efforts S–W–B expended in partially performing the contracts contributed to the creation of a right to receive income upon successful completion of the underwriting and made the partially performed contracts valuable. When First Nebraska paid a portion of the purchase price for the assignment of the contracts to it, it compensated S–W–B for its efforts and S–W–B realized gain, which should not be allowed to escape taxation.

Expenses incurred in earning a substantial part of that income had already been deducted by S–W–B as part of its operational costs. Thus, if the resulting income is not taxed, the Government is in effect sharing or subsidizing the operational costs of S–W–B on these substantially completed contracts.

■ In determining whether to tax the assignor or the assignee for future income the question is whether the assignment transferred a right to receive future income as distinguished from a transfer of property which produces the future income. "Earn" is used in this context to distinguish the former situation from the latter. If the future income to the assignee arises, as in this case, from the assignor's efforts prior to the assignment and not from the property which he transfers, it is earned and subject to the assignment of income doctrine.

The Tax Court believed that allocation of the purchase price was immaterial to the applicability of the assignment of income doctrine. To the contrary, the portion of the purchase price allocable to the income earned on the specific underwriting contracts in progress was consideration given for an assignment of anticipated income. As such, it was properly taxable to S–W–B

---

7. See *J. Ungar, Inc. v. Comm'r,* 224 F.2d 90 (2d Cir. 1957), aff'ing 26 T.C. 331 (1956) (income taxable as anticipatory assignment of income even though not accruable on the date of the assignment); *Comm'r v. Kuckenberg,* 309 F.2d 202, 207–08 (9th Cir. 1962), cert. denied, 373 U.S. 909, 83 S.Ct. 1296, 10 L.Ed.2d 411 (1963) (Commissioner empowered under section 446(b) of the Code to impose percentage-of-completion accounting method on corporation which assigned uncompleted construction contract even though profitability of contract at time of assignment was uncertain); *Jud Plumbing & Heating, Inc. v. Comm'r,* 153 F.2d 681 (5th Cir. 1946) (Commissioner empowered under predecessor of section 446(b) to allocate part of income realized by shareholder under completed-contract method of accounting to corporation that assigned partially completed construction contract during liquidation); *Standard Paving Co. v. Comm'r,* 190 F.2d 330 (10th Cir. 1951) (same, contract assigned to another corporation during reorganization); Morrison, *Assignment of Income and Tax Benefit Principles in .Corporate Liquidations,* 54

Taxes 902, 904–15 (1976). But see *United Mercantile Agencies,* 34 T.C. 808 (1960) (collection agency's pre-collection efforts worthless).

8. This result is not inconsistent with the cases which tax income already accrued at the time of liquidation to the assigning corporation. E. g., *Williamson v. United States,* 292 F.2d 524 (Ct.Cl.1961).

In *John T. Stewart III Trust,* 63 T.C. 682 (1975), a mortgage banker in liquidation sold mortgage servicing contracts. Fees were paid under the contracts as the services were performed, and the assignor had already been paid for the services it had performed. The Tax Court held that the assignment of income doctrine did not apply because the income to be received in the future had not been earned by the seller prior to the sale and would be received by the purchaser only for services to be performed by it after the sale. Here, First Nebraska received income that was attributable in part to S–W–B's efforts before the date of the assignment.

as income to it. The fact that the parties agree as to the value of the assigned contract rights, as was done in the *Midland-Ross* case, makes it easier to establish the amount of such earned income. But the failure of both parties to agree, or the fact that one party unilaterally fixes a value, does not mean that there are no earnings, or that such an earnings amount cannot be ascertained. We remand to the Tax Court for findings as to what part of the unallocated purchase price of $230,000 should be ascribed to income earned on the contracts transferred by S–W–B at the time of the assignment.[9]

Reversed and remanded.

---

**9.** The Tax Court assumed that the efforts of S–W–B would lead to profits accruing to First Nebraska. Included in the Tax Court opinion is the following:

Although the record herein gives every indication that all of the parties at all times assumed that the Great Plains common stock offering would be completed in due course as originally planned, the fact remains that all of S–W–B's compensation in connection therewith remained contingent until it was in fact completed.

*Robert H. Storz*, P–H Tax Ct. ¶ 68.9, at 68–51, n. 5 (1977).

The Tax Court clearly suggests that First Nebraska paid value for the efforts of S–W–B on the contracts, and that the payment was made because certain moneys had been earned as of that time even though not fully accrued. We thus leave it to the Tax Court on remand to determine the value of S–W–B's efforts on the unfinished contracts. That amount should be considered under the assignment of income doctrine as income to S–W–B for the taxable year in question.