Prentice I. ROBINSON, et al.,
Petitioners, Appellants,

v.

COMMISSIONER OF INTERNAL
REVENUE, Respondent,
Appellee.

Centronics Data Computer Corporation
and Subsidiaries, Intervenor.

No. 86–1158.

United States Court of Appeals,
First Circuit.

Heard Sept. 4, 1986.

Decided Nov. 13, 1986.

Jerome S. Hertz, with whom Malcolm L. Russell-Einhorn and Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C., Boston, Mass., were on brief, for petitioners, appellants.

Bruce R. Ellisen, Tax Div., Dept. of Justice, with whom Roger M. Olsen, Asst. Atty. Gen., Michael L. Paup and Jonathan S. Cohen, Washington, D.C., were on brief, for respondent, appellee.

Dennis I. Meyer, with whom Bertrand M. Harding, Jr., A. Duane Webber and Baker & McKenzie, Washington, D.C., were on brief, for intervenor.

Before BOWNES and TORRUELLA, Circuit Judges, and CARTER,* District Judge.

TORRUELLA, Circuit Judge.

This appeal concerns the meaning of the timing provisions of Section 83 of the Internal Revenue Code, 26 U.S.C. § 83, which governs the taxation of property transferred in connection with a performance of services.

---

* Of the District of Maine, sitting by designation.

1. Because we find for appellant on the basis of our interpretation of Section 83 we do not reach the question as to whether the stock option was

## I. *The Stock Option Agreement*

Appellant Prentice Robinson held an option to purchase stock, at a below market price, in Centronics Data Computer Corp., a Delaware corporation with its principal place of business in New Hampshire. Robinson received the option as part of his employment package when he became a Centronics employee during the spring of 1969.[1]

The distinguishing feature of the stock option agreement that leads to this dispute is a provision that required Robinson to sell his shares back to Centronics, at his original cost, if he wished to dispose of them in less than one year from the day he exercised the stock option. The effect of this sellback provision was similar to the insider trading rule of the Securities Exchange Act of 1934, 15 U.S.C. § 78p(b) ("Rule 16b"), which requires the insider to disgorge to the corporation any profit made on a short term sale.

The option agreement also required that the stock certificate issued to Robinson carry the following legend:

The shares represented by this certificate have not been registered under the Securities Act of 1933 and may not be sold, offered for sale or otherwise transferred or disposed unless a registration statement under such Act is in effect with respect thereto or unless the company has received an opinion of counsel satisfactory to it, that an exemption from such registration is applicable to said shares.

To further protect its interests, Centronics placed a "stop transfer order" with the corporation's transfer agent. The stop transfer order required the agent to notify Centronics of any request to transfer Robinson's stock to a new owner and prohibited the agent from transferring the shares without Centronics' approval and without an opinion of Centronics' counsel that the transfer did not violate securities laws.

---

granted before Section 83 was applicable and, thus, subject to the more permissive timing rule of Treasury Regulation Section 1.4216.

On March 4, 1974, Robinson exercised the option. The present appeal requires us to determine when Robinson realized a benefit from the option agreement and when, not whether, he should have paid Federal income taxes on it.

## II. *Section 83*

Section 83 of the Internal Revenue Code, 26 U.S.C. § 83, states that the value of property transferred in connection with the performance of services shall be taxable income "in the first taxable year in which the rights of the person having the beneficial interest in such property *are transferable or are not subject to a substantial risk of forfeiture*, whichever is applicable." I.R.C. § 83(a) (emphasis added). Appellant contends that the sellback provision of the option agreement, combined with the legend on the stock certificate and the stop transfer order, (1) subjected his stock to a substantial risk of forfeiture and (2) rendered it non-transferable until 1975. We agree and therefore reverse the opinion of the Tax Court below.

## III. *"Substantial Risk of Forfeiture"*

While not defining the term "substantial risk of forfeiture," Congress offered some guidance as to its meaning in § 83(c)(1) and in the legislative history of that section. I.R.C. § 83(c)(1) is a "special rule" that states "[t]he rights of a person in property are subject to a substantial risk of forfeiture if such person's rights to full enjoyment of such property are conditioned upon the future performance of substantial services by any individual." The Committee Reports on the Bill enacting § 83 explain that "[i]n other cases the question of whether there is a substantial risk of forfeiture depends upon the facts and circumstances." H.R.Rep. No. 91–413 (Pt. 1), 91st Cong., 1st Sess. 62, 88 (1969–3 Cum. Bull. 200, 255) (hereinafter cited as House Re-

port); S.Rep. No. 91–552, 91st Cong., 1st Sess. 119, 121 (1969–3 Cum.Bull. 423, 501) (hereinafter cited as Senate Report); U.S. Code Cong. & Admin.News 1969, p. 1645. Congress thus left further definition of the term to the Treasury Department and the courts.

■ The Treasury Regulations pursuant to § 83, like § 83 itself, do not define what constitutes a substantial risk of forfeiture. They recapitulate the "special rule" and the facts and circumstances test and then add an additional rule: "A substantial risk of forfeiture exists where rights in property that are transferred are conditioned, directly or indirectly, ... upon the occurrence of a condition *related to a purpose of the transfer,* and the possibility of forfeiture is substantial if such condition is not satisfied." 26 C.F.R. 1.83–3(c)(1) (emphasis added). Satisfaction of either the § 83(c)(1) special rule or the Treasury regulation additional rule indicates a substantial risk. In other cases the "facts and circumstances" may still be such that there is a substantial risk of forfeiture.[2]

Neither the statutory nor the regulatory rule fit appellant's situation. We, therefore, must resort to logic and common sense. The sellback provision of the stock option agreement contemplates a forfeiture of Robinson's beneficial interest in the stock transfer if he sells the stock in less than a year. But the forfeiture is not conditioned on his future performance of any services. And the Tax Court found that the sellback provision was not related to the purpose of the transfer.[3]

Accordingly, we are left with the question of whether, in the facts and circumstances of Robinson's case, the risk of forfeiture was "substantial." The Tax Court found that the risk was insubstantial, because the sellback provision would expire

---

2. Accordingly, the Tax Court erred when it treated the § 83(c)(1) special rule and the Treasury Regulation additional rule as defining the only conditions that create a substantial risk under IRC § 83.

3. This finding, while not a pure finding of fact, merits some deference because it was based, at least in part, on the testimony of witnesses whose powers of recollection, and therefore credibility, were at issue.

in one year. We cannot agree with this logic.

■ Whether a condition creates a substantial risk of forfeiture is not a function of time, nor, as the Commissioner urges in this appeal, is it a function of the likelihood of triggering the event that will require the forfeiture to take place. To the extent that the substantiality of the risk depends on probability, the probability should be measured by the likelihood of the forfeiture taking place once the triggering event occurs. *See* 26 C.F.R. 1.83–3(c)(1). Here, the likelihood of the triggering event (sale of the stock in less than a year) was very low; Robinson would not be so foolish as to risk the forfeiture. But, if he had sold the stock in less than a year, the probability of Centronics enforcing the sellback provision was very high. The company had a fiduciary duty to its shareholders to do so.

■ This probability alone, however, does not satisfy § 83(a). Otherwise, a clever draftsman could evade the purpose of § 83 by adding a formula forfeiture provision to transfers of property in exchange for services. Congress enacted § 83 to curb the use of sales restrictions to defer taxes on property given in exchange for services. *See* House Report, *supra;* Senate Report, *supra.* Congress drafted a broad rule that declares property to be vested and taxable as soon as it can be transferred or is not subject to a *"substantial* risk of forfeiture." The use of the modifier *substantial* indicates that the risk must be real; it must serve a significant business purpose apart from the tax laws.

The § 83(c)(1) special rule providing that conditions based on future performance of services create a substantial risk illustrates this requirement. Conditioning the right to property on future performance of services serves an important business purpose: ensuring continued performance and loyalty. The Treasury regulation additional rule, that conditions related to the purpose of the transfer of the property create a substantial risk, is consistent with this principle as well. Section 83 property is transferred for some reason that has an existence apart from the tax laws: for example, the transferee invented a new device, performed some essential task, or brought some needed expertise to the organization. If the risk of forfeiture relates to this reason, it is substantial.

■ Applying the same principle to this case we find that Robinson's stock was subject to a substantial risk of forfeiture until the sellback provision elapsed. The tax court found as fact that Centronics imposed the sellback provision to prevent Robinson from engaging in insider trading. The officers of the corporation wanted to prevent Robinson from using his knowledge of the company to make a profit on a short term change in the corporation's position.[4] The sellback condition thus served a significant business purpose.[5]

## IV. *"Transferable"*

We now turn to the analysis of whether Robinson's stock was transferable according to § 83(a) prior to the expiration of the sellback provision. Under § 83, rights in

4. In enacting Rule 16b, Congress determined that insider trading with a period between purchase and sale of six months or less was of sufficient concern that it should be prohibited. Recognizing that the harm caused by such short swing insider trading accrues to the corporation, Congress provided that any profit made on the prohibited trade should be disgorged to the corporation. The likelihood of harm to the corporation from insider trading diminishes as the length of time between purchase and sale increases. Centronics extended the statutory six month forfeiture to a contractual one year forfeiture. We express strong reservations on whether contractual insider trading forfeitures extending longer than one year would create a substantial risk of forfeiture.

5. The 1981 amendment to § 83 that declares that the risk of forfeiture from the Rule 16b insider trading forfeiture provision is "substantial" supports our conclusion. *See* 95 Stat. 260, 26 U.S.C. § 83(c)(3). The 16b insider trading forfeiture provision has the same effect as Robinson's sellback condition. While the amendment was not explicitly retroactive (and we make no determination that it should or should not be given retroactive effect), it suggests that a similar contractual risk of forfeiture should be considered substantial as well.

property are transferable "only if the rights in such property of any transferee are not subject to a substantial risk of forfeiture." § 83(c)(2).[6] We have already held that the sellback provision subjected Robinson's interest in the stock to a substantial risk of forfeiture. The transferability question hinges on whether Robinson can transfer the stock free of this risk.

Under Delaware law a purchaser of stock who has knowledge of a sale restriction on the stock is bound by the restriction. *See, e.g., Joseph E. Seagram & Sons, Inc. v. Conoco, Inc.,* 519 F.Supp. 506, 514 n. 6 (D.Del.1981). Accordingly, only a purchaser who was unaware of the sellback provision would not be bound by it. In order to sell the stock to an unknowing purchaser, the Tax Court found that Robinson would have faced several hurdles which he could have surmounted in only extraordinarily unusual circumstances.

First, he would have had to violate the option agreement forbidding him to sell the shares to anyone without offering them first to Centronics at his original cost. Robinson testified, and the Commission does not dispute, that such a breach would have threatened his continued employment with Centronics. Second, the stock certificate carried a legend[7] that the Tax Court concluded limited "lawful transfer of the restricted securities ... [to] an exempt private resale unless the Option Stock were registered." As the Tax Court found, "a purchaser in a private resale must be an informed person, frequently represented by counsel." Finally, the stop transfer order prohibited the transfer of the official stock certificate without Centronics' approval.

These hurdles rendered the stock nontransferable until the sellback provision lapsed. The Tax Court's contrary finding was not based upon evidence of the practical workings of the securities markets, but rather upon a hypothetical, back-door

transfer in breach of the option agreement. This was error. Transferability under § 83(a) depends on standard practices and assumes observance of contracts, not hypothetical *sub rosa* violations.

Accordingly, the order of the Tax Court is *reversed.*

---

**6.** We agree with appellant that this § 83(1)(2) "special rule" does not define "transferable." But because we find that this special rule covers appellant's case we have no need to go into the exact definition of "transferable" within § 83.

**7.** *See ante,* at page 39.