United States Court of Appeals,

Fifth Circuit.

No. 91-4395.

MONTELEPRE SYSTEMED, INC., Petitioner-Appellant,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.

March 30, 1992.

Appeal from a Decision of the United States Tax Court.

Before REAVLEY, HIGGINBOTHAM and DEMOSS, Circuit Judges.

REAVLEY, Circuit Judge:

Taxpayer Montelepre Systemed, Inc. (Systemed) gave up one of its rights under a management contract in exchange for money. The Tax Court characterized the payment that Systemed received as compensation taxable under 26 U.S.C. § 83 in the first year that Systemed's right ceased being subject to a substantial risk of forfeiture. We hold that Systemed's right was subject to a substantial risk of forfeiture until Systemed disposed of that right, and that the assignment-of-income doctrine precludes application of 26 U.S.C. § 337 to the payment that Systemed received. We affirm the Tax Court's judgment in favor of the Commissioner of Internal Revenue (CIR).

I. BACKGROUND

Thian and Company (Thian), a Louisiana limited partnership, developed Chalmette General Hospital (Chalmette General). Just before Chalmette General opened in 1975, Thian entered into a

hospital management contract (the Contract) with Systemed.  At this time, Paul Montelepre held both a controlling interest in Systemed and a general partnership interest in Thian.

The Contract provided that Thian would not sell Chalmette General without first affording Systemed the right of first refusal (the Right).[1]  The Contract precluded Systemed from assigning the Right.  The Contract did not specify whether Systemed's Right terminated with the Contract.

In December 1982, while Thian and Systemed were conducting business under the Contract, Qualicare of Chalmette, Inc. (Qualicare) offered Systemed $1.5 million to forfeit the Right. Qualicare made its offer contingent on its purchase of Chalmette General.  Systemed accepted.  On March 15, 1983, Systemed's shareholders formally adopted a plan of liquidation.  Two days later, Qualicare acquired Chalmette General and paid Systemed $1.5 million.

---

[1]The Contract, referring to Systemed as "Operator" and Thian as "Owner," specified Systemed's Right as follows:

> In the event the Owner receives an offer (the "Offer") from any third party to acquire the Hospital or all or substantially all of the assets of Owner which offer it desires to accept, the Owner shall give written notice thereof to the Operator setting forth in detail the terms and conditions of the Offer.  The Operator shall have the option for sixty (60) days following notice to it of the Offer to purchase the Hospital or assets covered by the Offer upon the terms and conditions set forth therein.  If the Operator does not exercise its option, the Owner may sell the Hospital or such assets in accordance with the terms of the Offer.

Systemed did not include the $1.5 million payment from Qualicare in its taxable income for the year ending March 31, 1983, and instead explained that this "capital gain [was] not recognized per [26 U.S.C. §] 337 liquidation." In 1988, CIR sent Systemed the following notice of deficiency:

> the $1,500,000 paid to you by Qualicare as a management fee is taxable income under section 83 of the Internal Revenue Code. Therefore, your taxable income is increased $1,500,000.

Systemed contested CIR's proposed income increase by filing a petition in the Tax Court. The Tax Court issued an opinion in which it considered the parties' arguments under section 83 and ruled in CIR's favor.

## II. DISCUSSION

Systemed contends on appeal that section 83 does not support CIR's notice of deficiency and section 337 precludes it.

A. SECTION 83

Section 83(a) explains how property received in exchange for services is taxed:

> If, in connection with the performance of services, property is transferred to any person other than the person for whom such services are performed, the excess of—
>
> > (1) the fair market value of such property ... at the first time the rights of the person having the beneficial interest in such property are transferable or are not subject to a substantial risk of forfeiture, whichever occurs earlier, over

> (2) the amount ... paid for such property,

> shall be included in the gross income of the person who performed such services *in the first taxable year in which the rights of the person having the beneficial interest in such property are ... not subject to a substantial risk of forfeiture....*

26 U.S.C. § 83(a) (emphasis added).  The Tax Court held that Systemed received the Right as part of its compensation for its hospital management services under the Contract, and therefore section 83 governs the valuation and taxation of the Right.  To hold Systemed liable for tax on the $1.5 million payment *in 1983,* the Tax Court also held that, until Qualicare bought Chalmette General, Systemed held the Right subject to a substantial risk of forfeiture.  The Tax Court understood the Right to be "substantially nonvested" in 1983, meaning that the Right was both subject to a substantial risk of forfeiture and nontransferable. *See* Treas.Reg. § 1.83-3(b).  And if

> substantially nonvested property (that has been transferred in connection with the performance of services) is subsequently sold or otherwise disposed of to a third party in an arm's length transaction while still substantially nonvested, the person who performed such services shall realize compensation in an amount equal to the excess of—

> (i) The amount realized on such sale or other disposition, over

> (ii) The amount (if any) paid for such property.

> Such amount of compensation is includible in his gross income in accordance with his method of accounting.

Treas.Reg. § 1.83-1(b).

On appeal, Systemed does not dispute the Tax Court's characterization of the Right as section 83 property or the Tax Court's holding that the Right was never transferable.  Systemed

only argues that the Right was not subject to a substantial risk of forfeiture in the tax year ending March 31, 1983, so section 83 applied in a previous tax year for which CIR has not sought tax adjustment. We reject the two theories that Systemed offers in support of this argument.

*1. Right Survival of Contract*

Systemed contends that a right of first refusal relating to immovable property is a *sui generis* real right that is not extinguished upon termination of the Contract, citing *Crawford v. Deshotels,* 359 So.2d 118, 122 (La.1978) and *Terrell v. Messenger,* 428 So.2d 1241, 1247 (La.Ct.App.1983) in support. While these cases suggest that a recorded right of first refusal can be a real right under Louisiana law, neither purports to establish a universal rule for the duration of that right.

The parties' intent governs our construction of the Right's duration. *Price v. Town of Ruston,* 132 So. 653, 655–56 (La.1931); *see also Ebrecht v. Ponchatoula Farm Bureau Ass'n,* 498 So.2d 55, 57 (La.Ct.App.1986) ("[L]essor's inclusion of the "first right to purchase' in a lease agreement without an option to renew the lease and the plaintiff's failure to show that the lessee ever attempted to negotiate a new lease are evidence that the term of the "first right to purchase' was intended to be limited by the length of the lease;" "When the lease terminated by its own terms, the "right of first refusal' also terminated."); 1A CORBIN ON CONTRACTS § 261 at

476 (1963) ("In all cases, interpretation [of a right of first refusal] requires knowledge of the entire context, context of facts as well as context of words.").

While the Contract specifies no time for the Right's termination, the Contract's provisions and the circumstances surrounding the Contract's execution indicate that the parties intended the Right to be coterminous with the Contract. The way that Systemed and Thian phrased the Right indicates that they understood that, to exercise the Right, Systemed must still be Chalmette General's operator. The Contract language establishing the Right only refers to Systemed as "Operator." Moreover, in the Contract's section 10, immediately after establishing Systemed's Right, the Contract states:

> In the event that the [hospital's third-party] purchaser desires to continue the services of Operator pursuant to this contract, then this agreement shall continue in force and Owner's obligations hereunder shall be transferred to the Purchaser at the act of sale. In the event that purchaser does not desire to continue the services of Operator pursuant to the terms of this contract, then this contract shall terminate upon the act of sale. In such latter event, any Management Fees accrued but deferred ... due Operator shall be paid in full.

This language illustrates the parties' understanding that if Systemed declined to purchase the hospital, Systemed could continue operating the hospital under the Contract unless the new owner chose to replace Systemed upon paying Systemed all fees due. But these options for Systemed only make sense if the Contract still governed the relationship between Systemed and Thian at the time that Thian sold Chalmette General. Reading this section of the Contract as a whole, we think that the parties understood that

Systemed's Right was coterminous with the contract.

Nothing in the Contract indicates that Thian granted Systemed the Right indefinitely and unconditionally. Had this been the case, the parties would likely have recorded Systemed's Right because without recordation or actual notice, Systemed could not enforce its Right against third parties. *See E.P. Dobson, Inc. v. Perritt,* 566 So.2d 657, 660 (La.Ct.App.1990). While Systemed was managing Chalmette General under the Contract, it would necessarily be aware of any prospective purchasers and could notify them of its Right, so it is understandable that Systemed saw no need to record the Right.

We thus agree with the Tax Court that Systemed had to continue performing substantial services under the Contract to retain the Right.

*2. Actual Risk of Contract Termination*

Systemed states that if the Right was coterminous with the Contract, this fact only establishes that the Right was subject to a risk of forfeiture. Systemed argues that the Tax Court erred by not considering all of this case's facts and circumstances to assess the *substantiality* of the risk to which the Right was subject. *See* Treas.Reg. § 1.83-3(c)(1) ("whether a risk of forfeiture is substantial or not depends upon the facts and circumstances").

We agree with CIR that a facts and circumstances test is unnecessary in this case. Congress prescribes that "[t]he rights of a person in property are subject to a substantial risk of forfeiture if such person's rights to full enjoyment of such property are conditioned upon the future performance of substantial services by any individual." 26 U.S.C. § 83(c)(1). And the House Report on section 83(c)(1) explains that a

> substantial risk of forfeiture will be considered to exist where the person's rights to the full enjoyment of the property are conditioned upon *his* future performance of substantial services. *In other cases* the question of whether there is substantial risk of forfeiture depends upon the facts and circumstances.

H.R.REP. NO. 413, 91st Cong., 1st Sess., pt. 1, at 88 (1969), *reprinted in,* 1969 U.S.C.C.A.N. 1645, 1735 (emphasis added); *see also Robinson v. Commissioner,* 805 F.2d 38, 40 (1st Cir.1986) (facts and circumstances test only applicable when section 83(c)(1) does not apply).

Systemed recognizes that the Contract required it to perform substantial services, but simply argues that section 83(c)(1) only applies to natural persons and not corporations such as itself. In support of its argument, Systemed points to the House Report's use of the word "his" and to the fact that the performance of substantial services is a greater burden to individuals than to corporations, which can simply hire more agents. We find nothing in the language or history of section 83 to suggest that Congress intended to limit its application to natural persons. *See* 26 U.S.C. § 7701(a) (in Title 26, "where not otherwise distinctly

expressed or manifestly incompatible with the intent thereof—[t]he term "person' shall be construed to mean and include ... a ... corporation").  Moreover, we do not agree that individuals are necessarily more burdened by performing substantial services than corporations.  And even if individuals are always more burdened, nothing suggests that Congress considered the relative burden of performing substantial services a significant consideration in enacting section 83(c)(1).  Systemed's retention of the Right was conditioned on its continued performance of substantial services under the Contract until a third party offered to purchase Chalmette General.  So, under section 83(c)(1), Systemed held the Right subject to a substantial risk of forfeiture until it relinquished the Right in exchange for $1.5 million from Qualicare.

Thus, we conclude that the Tax Court properly held that, in 1983, the $1.5 million that Systemed received from Qualicare "is compensation under section 83."

B. SECTION 337

The Tax Court did not consider Systemed's contention that, even if the payment that Systemed received from Qualicare is taxable under section 83, section 337, as it existed in 1983, allowed Systemed to refrain from recognizing the payment on its 1983 corporate tax return.  We consider and reject Systemed's contention.

In 1983, section 337(a) provided that:

> If, within the 12-month period beginning on the date on which a corporation adopts a plan of complete liquidation, all of the assets of the corporation are distributed in complete liquidation, less assets retained to meet claims, then no gain or loss shall be recognized to such corporation from the sale or exchange by it of property within such 12-month period.

26 U.S.C. § 337(a). Systemed claims that this language governs its disposal of the Right. But the Supreme Court recognizes that section 337 does not absolutely free a corporation "from tax on gains whenever it decides to liquidate." *Central Tablet Mfg. Co. v. United States,* 417 U.S. 673, 691, 94 S.Ct. 2516, 2526, 41 L.Ed.2d 398 (1974).

In *Hillsboro Nat'l Bank v. Commissioner,* 460 U.S. 370, 397-402, 103 S.Ct. 1134, 1150-53, 75 L.Ed.2d 130 (1983), the Court traces the development of the rationale supporting section 337. The statute has its origin in *General Util. & Operating Co. v. Helvering,* 296 U.S. 200, 206, 56 S.Ct. 185, 187, 80 L.Ed. 154 (1935), where the Court established the doctrine that a corporation need not recognize gain on the distribution of appreciated corporate property to its shareholders. Congress codified this doctrine as section 336 of the 1954 Internal Revenue Code.[2] After considering the legislative history of section 336, the Court concluded that

the real concern of the provision is to prevent recognition of

---

[2]In 1983, section 336 provided, with exceptions not relevant here, "no gain or loss shall be recognized to a corporation on the distribution of property in partial or complete liquidation." 26 U.S.C. § 336 (1976 ed., Supp. V).

market appreciation [of each corporate asset] that has not been realized by an arm's-length transfer to an unrelated party rather than to shield all types of income that might arise from the disposition of an asset.

*Hillsboro,* 460 U.S. at 398, 103 S.Ct. at 1151. The Court then considered how other courts have interpreted section 336 in conformity with its "market appreciation" purpose: [3]

> Even in the absence of countervailing statutory provisions, courts have never read the command of nonrecognition in § 336 as absolute. The "assignment of income" doctrine has always applied to distributions in liquidation. That judicial doctrine prevents taxpayers from avoiding taxation by shifting income from the person or entity that earns it to someone who pays taxes at a lower rate. Since income recognized by the corporation is subject to the corporate tax and is again taxed at the individual level upon distribution to the shareholder, shifting of income from a corporation to a shareholder can be particularly attractive: it eliminates one level of taxation. Responding to that incentive, corporations have attempted to distribute to shareholders fully performed contracts or accounts receivable and then to invoke § 336 to avoid taxation on the income. In spite of the language of nonrecognition, the courts have applied the assignment-of-income doctrine and required the corporation to recognize the income.

*Id.* at 398–99, 103 S.Ct. at 1151 (citations and footnotes omitted).

The Court then explained how section 337 evolved from the *Helvering* doctrine that became section 336. In *Commissioner v. Court Holding Co.,* 324 U.S. 331, 65 S.Ct. 707, 89 L.Ed. 981 (1945), the Court held that, if a corporation plans the sale of its assets and distributes the assets to its shareholders as part of its liquidation, then, when the shareholders sell the assets according to the corporation's plan, the proceeds are taxable to both the

---

[3]The Court later stated that "Congress did not intend to allow corporations to escape taxation on business income earned while carrying on business in the corporate form; what it did intend to shield was market appreciation." *Hillsboro,* 460 U.S. at 401, 103 S.Ct. at 1152.

corporation and the shareholders. *Id.* at 334, 65 S.Ct. at 708. But in *United States v. Cumberland Pub. Serv. Co.,* 338 U.S. 451, 70 S.Ct. 280, 94 L.Ed. 251 (1950), the Court held that if the shareholders negotiate the sale of corporate assets upon the corporation's liquidation, the corporation may escape tax on gains from those sales. The Court stated that, "[w]hile the distinction between sales by a corporation as compared with distribution in kind followed by shareholder sales may be particularly shadowy and artificial when the corporation is closely held, Congress has chosen to recognize such a distinction for tax purposes." *Id.* at 454–55, 70 S.Ct. at 282. Congress enacted section 337 to eliminate the confusion wrought by the distinction that evolved from *Court Holding* and *Cumberland.* "The very purpose of § 337 was to create the same consequences as § 336" if the corporation, rather than the shareholders, sold its assets while executing a plan of liquidation instead of distributing them directly to the shareholders, so "the two provisions ... should be construed in tandem." *Hillsboro,* 460 U.S. at 400–401, 103 S.Ct. at 1152.

The Court's endorsement of the assignment-of-income doctrine as an exception to section 336 and the Court's conclusion that sections 336 and 337 must be construed in tandem require us to reject Systemed's section 337 argument. Under section 83(b), Systemed could have elected to value the Right in 1975 and pay taxes then on this aspect of its compensation under the Contract. Then section 337 would have protected Systemed from tax on any market appreciation of the Right. Instead, Systemed waited to

dispose of the Right for value until after it declared a plan of liquidation under section 337.  This is exactly the conduct that the Court in *Hillsboro* understood to fall within the assignment-of-income doctrine.  Systemed attempts to shift income that *Systemed* earned to its shareholders to avoid one level of tax. Like the courts in *Midland–Ross Corp. v. United States,* 485 F.2d 110, 119 (6th Cir.1973) [4] and *Commissioner v. Kuckenberg,* 309 F.2d 202, 205 (9th Cir.1962), *cert. denied,* 373 U.S. 909, 83 S.Ct. 1296, 10 L.Ed.2d 411 (1963) which refused to permit section 337 nonrecognition of proceeds that are attributable to corporate efforts but collected during liquidation, we think that Systemed

> has performed the services which create the right to the income which brings into play the basic rule that income shall be taxed to him who earns it.  *Helvering v. Eubank,* 1940, 311 U.S. 122, 61 S.Ct. 149, 85 L.Ed. 81.

Because the Right was compensation to Systemed under section 83 and Systemed did not pay tax on that corporate-earned income before declaring its liquidation, Systemed's attempt to avoid the tax now under section 337 is thwarted by the assignment-of-income doctrine.


The Tax Court's judgment is AFFIRMED.

---

[4] We adopt the *Midland–Ross* court's analysis of why the assignment-of-income doctrine limits section 337's definition of property without repeating that analysis here.  *See Midland–Ross,* 485 F.2d at 114–118.